ELBERT N. MANNING *et al.* Appellees, *vs.* THE MERCAN-
TILE SECURITIES COMPANY *et al.*—(THOMAS RHODUS
*et al.* Appellants.)

*Opinion filed December 22, 1909.*

1. PRACTICE—*practice as to entitling proceeding for contempt is
not uniform nor of great importance.* Where a proceeding is for
a criminal contempt it is proper to entitle the proceeding as a
prosecution by the People, and where the proceeding is merely in-
cident to the main suit it is proper to entitle the papers as in such
suit; but the practice is not uniform nor of great importance.

2. SAME—*appeal in contempt proceeding incident to chancery
suit is properly prosecuted under original title.* An appeal in a
contempt proceeding for refusing to obey an order of the court in
a receivership proceeding in chancery is properly prosecuted un-
der the same title as is borne by the chancery suit.

3. CONSTITUTIONAL LAW—*right of witness to refuse to furnish
incriminating evidence against himself.* The right of a witness
to refuse to furnish evidence which will incriminate himself is a
firmly established constitutional right, but to entitle him to his
privilege of silence the court must see, from the circumstances and
the nature of the required evidence, that there is reasonable ground
to apprehend danger to the witness if he furnishes the evidence.

4. SAME—*rule to produce books in chancery proceeding is dif-
ferent from rule to testify or produce books in criminal case.* A
rule requiring an officer of an insolvent corporation to turn over
the books of the corporation to the receiver appointed, stands on a
different footing from a rule requiring him to testify or produce
the books before a petit or grand jury in a criminal case pending
in court against him or under investigation by the grand jury.

5. CONTEMPT—*officer of insolvent corporation may be required
to turn over books to receiver.* An officer of an insolvent corpora-
tion who is a party to the receivership proceeding cannot refuse
to obey an order to turn over the books and papers of the corpo-
ration to the receiver on the mere ground that they may contain
evidence tending to incriminate him, since the possession of the
receiver is the possession of the court, and if such books and pa-
pers are found by the court to contain incriminating evidence, the
constitutional rights of the party can then be protected.

6. SAME—*what is not a sufficient answer to rule to show cause.*
An answer by an officer of an insolvent corporation to a rule to
show cause why he is not in contempt for refusing to turn over

the books and papers of the corporation to the receiver appointed, is insufficient which merely shows that such officer has been indicted for using the mails to carry out a fraudulent scheme and avers that the books and papers "might tend to incriminate" him on such charge.

7. SAME—*practice in inspection of privileged documents applies where privilege against furnishing incriminating evidence exists.* If a person who has been ruled to show cause why he is not in contempt for refusing to turn over books and papers has the right to invoke his constitutional privilege against furnishing evidence which may incriminate him, his answer should follow the practice with reference to the discovery and inspection of privileged documents, and should point out the books and documents he claims are incriminating and offer to turn over those that are not.

8. SEQUESTRATION—*office of writ of sequestration.* The office of the writ of sequestration in chancery practice is to furnish a remedy by which property may be taken possession of by the court in order to enforce obedience to its decree, and while the writ is now seldom used it is not prohibited nor obsolete but is recognized by statute in Illinois, and may be resorted to whenever necessary.

9. SAME—*writ of sequestration is a proceeding in rem while contempt proceeding is in personam.* The writ of sequestration in chancery runs against the property of a contumacious defendant and is a proceeding *in rem,* while a contempt proceeding is against the person of a contumacious defendant and is *in personam.*

10. SAME—*court may issue writ of sequestration pending appeal in contempt proceeding.* The pendency of an appeal from an order adjudging the officers of an insolvent corporation to be in contempt for refusing to obey an order to turn over the books and papers of the corporation to the receiver appointed by the court does not deprive the court of power to issue a writ of sequestration against their property.

11. SAME—*when the issue of a writ of sequestration is proper.* Where the officers of an insolvent corporation appeal from an order adjudging them to be in contempt for refusing to obey an order to turn over the books and papers of the corporation to the receiver appointed, thus leaving the books, papers and assets of the corporation in their possession without any security that they will be forthcoming in case it is adjudged to be their duty to obey the order to turn over the books and papers, which was not appealed from, it is proper for the court to issue a writ of sequestration against their property.

CARTWRIGHT, J., specially concurring; FARMER, C. J., and VICKERS, J., dissenting.

APPEALS from and writ of error to the Circuit Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

JOSEPH B. DAVID, and BENJAMIN C. BACHRACH, for appellants and plaintiffs in error.

WEISSENBACH & MELOAN, and KRAUS, ALSCHULER & HOLDEN, for appellees and defendants in error.

Mr. JUSTICE HAND delivered the opinion of the court:

The several appeals of Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus from a judgment entered by the circuit court of Cook county on September 24, 1908, finding the said Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus guilty of contempt of court and committing them to the jail of Cook county not to exceed six months for the failure of said Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus to comply with an order theretofore entered in a certain chancery suit then pending in the circuit court of Cook county wherein John C. Fetzer had been appointed receiver of the Mercantile Securities Company, requiring them, said Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus, as officers of said corporation, to turn over to said John C. Fetzer, as such receiver, all the books of account, papers, documents, correspondence, stock books, stock register, check books, canceled checks and other papers, of whatsoever kind and character, in their possession belonging to the Mercantile Securities Company, together with a writ of error sued out by Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus to review the action of said circuit court in granting an order of sequestration, have been consolidated in this court.

The bill in the chancery suit in which John C. Fetzer had been appointed receiver of the Mercantile Securities Company was filed by Elbert N. Manning, Louis P. Hugel, Herbert N. Cheetham and the Stadler Photographing Company against the Mercantile Securities Company, Birch

F. Rhodus, Thomas Rhodus, Edward T. Rhodus, Minnie C. Scully and eight corporations other than the Mercantile Securities Company, which corporations had been organized by said Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus. The said Birch F. Rhodus was the president, Thomas Rhodus the vice-president, Edward T. Rhodus the vice-president and secretary and Minnie C. Scully the treasurer of said Mercantile Securities Company, which corporation was organized under the laws of the State of Maine, the objects of which were stated in its charter to be the buying and selling of municipal bonds and other municipal securities, also stocks, bonds, mortgages and commercial paper, and which corporation had a nominal capital stock of $2,500,000. It was averred in the bill that all of the said corporations, including the Mercantile Securities Company, were fraudulently organized by Birch F., Thomas and Edward T. Rhodus, and that said Mercantile Securities Company had no other business than that of dealing in the fraudulent and worthless stocks of said corporations, and that its assets represented moneys received from the sales of stock to the public, and that the complainants were stockholders of said corporation, the object of the bill being to wind up the affairs of said Mercantile Securities Company.

It appears from the record that on the 18th day of September (the day upon which he was appointed receiver) John C. Fetzer made a demand upon the appellants to turn over to him, as such receiver, the books, etc., of the Mercantile Securities Company, and that said Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus upon the advice of counsel refused to turn over to said receiver the books, etc., of said Mercantile Securities Company; that on the 19th day of September John C. Fetzer, as such receiver, applied to the circuit court in said chancery suit for a rule upon said Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus to require them to turn over to him all

books, etc., of the Mercantile Securities Company, where-upon the court entered an order that said Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus turn over said books, etc., to said John C. Fetzer, as receiver, on or before the 22d day of September, or show cause on that day why they should not be attached for a contempt of court; that on September 23 the said Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus filed a joint answer to the order which required them to turn over the said books, etc., or show cause, in which they averred, among other things, that on the 23d day of July, 1908, an indictment was returned by the grand jury into the District Court of the United States for the northern district of Illinois against them charging them with having devised a scheme to defraud, and for the purpose of carrying said scheme into effect they had deposited in the post-office at Chicago certain letters in violation of section 5480 of the Revised Statutes of the United States, and attached to their answer a copy of said indictment, and averred that from an inspection of the said indictment it would appear that the matters and things required by the court to be turned over and delivered by the said Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus referred directly to and were a part of the matters and things charged in said indictment against them, and in which answer Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus admitted they had in their possession the books, etc., of the Mercantile Securities Company, but averred that they had declined to turn over said books to said John C. Fetzer, as receiver, as the said books of account, papers, documents, correspondence, stock books, stock register, check books, canceled checks and other papers "might tend to incriminate" them, the said Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus. The answer further averred that they were then under said indictment in the United States District Court, and that they availed themselves of their rights under sec-

tions 6 and 10 of article 2 of the constitution of this State and the fourteenth amendment to the constitution of the United States, and further said that they should not be required to give evidence against themselves and should not be required to furnish evidence which could be used in any criminal proceeding against them, and averred that the circuit court was without power to order them to give or furnish evidence which might be used against them in any criminal proceeding. It also appears from the record that on September 24, after a full hearing, the court held that said answer showed no good cause why said Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus should not turn over said books, etc., to said John C. Fetzer, as receiver, and entered an order adjudging them to be in contempt of court and committing them to the county jail of Cook county, which is the order from which the several appeals are prosecuted.

The several contentions of the parties will be considered in what we deem to be their logical order.

As a preliminary question it is insisted that the several appeals are not properly entitled in this court. In *Lester* v. *People,* 150 Ill. 408, it was held that ordinarily whether a contempt proceeding should be entitled and prosecuted as an independent proceeding in the name of the People or carried on as a part of the civil proceedings to which it is incident is of comparatively little importance and that the practice is not uniform. It was, however, said, that where the proceeding is for a criminal contempt it was more appropriate to prosecute in the name of the People, but where the contempt proceeding is really but an incident of the principal suit the usual practice is to entitle the papers in the original cause. The contempt proceeding was really but an incident of the original chancery suit, and we are of the opinion the appeals were properly prosecuted to this court under the same title as the chancery suit bore in the circuit court.

It is contended that the answer filed by Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus does not show that their constitutional right not to be compelled to give evidence against themselves will be impaired or infringed upon by said Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus being required and compelled to deliver to the said John C. Fetzer, as receiver, the possession of the books, papers, documents, correspondence, stock books, stock register, check books, canceled checks and other papers of the Mercantile Securities Company in their possession as officers of the said company. The appellants averred in their answer that they had been indicted in the United States District Court for a violation of section 5480 of the Revised Statutes of the United States for having devised a scheme to defraud and having used the United States mails to carry into effect said scheme; that from an inspection of the indictment found against them by the United States grand jury it would appear that the matters and things required to be turned over and delivered to the receiver refer directly to and are a part of the matters and things charged in said indictment, and that they had declined to turn over the said books, etc., to said receiver as they might tend to incriminate them; and the question now presented for decision is, does said answer, admitting its averments to be true, make such a case as entitles the appellants to claim their constitutional privilege to not be witnesses or to furnish evidence against themselves?

The right of a witness to refuse to furnish evidence which will incriminate himself is a constitutional right too firmly established to be questioned. (*Lamson* v. *Boyden,* 160 Ill. 613; *Counselman* v. *Hitchcock,* 142 U. S. 547.) To hold, however, that a party to a chancery suit may assert his constitutional privilege by saying, in response to an order of court that he turn over to a receiver the books, etc., of an insolvent corporation, "I have been indicted for a criminal offense by reason of my connection with the

corporation of which I am an officer, as will appear from reading the indictment found against me, and if I obey the order of the court and turn over to the receiver the books, etc., of the corporation they may contain matters which may tend to incriminate me," would be to hold that an officer of an insolvent corporation ordered to turn over the books, etc., of the corporation might set himself up as the sole and absolute judge as to whether the books, etc., which he had been ordered by the court to turn over to the receiver would incriminate him, which would be to place in the hands of an officer of an insolvent corporation the power to withhold from the receiver of said corporation the books, papers, documents and assets of the corporation to whatever extent he might see fit. We think, therefore, that the bare statement of a party to such a proceeding that the books, etc., which he had been ordered to turn over to the receiver might tend to incriminate him is not sufficient to excuse him from obeying the order of the court, but that his answer should place the matter in such shape that the court can intelligently determine the question from an examination of the averments of the answer, or, if necessary, from an inspection of the books, etc., whether they would tend to incriminate the party required to surrender them to the receiver. We think the rule announced by Chief Justice Cockburn in *Regina* v. *Boyes,* I B. & S. 311, to be a practicable one, where he said: "To entitle a party called as a witness to the privilege of silence, the court must see, from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer." Applying this rule to the case at bar, we think it apparent that it does not appear from the averments of the answer of the appellants that the books, etc., of the said corporation contain any evidence of an incriminating character as against the appellants and that their surrender to the re-

ceiver would tend to incriminate the appellants. *People* v. *Butler Street Foundry Co.* 201 Ill. 236; *State* v. *Thaden,* 43 Minn. 253; *Brown* v. *Walker,* 161 U. S. 591.

The books, etc., declined to be turned over to the receiver of the Mercantile Securities Company by the appellants may be presumed to be numerous, and it may be safely presumed that a large proportion of them,—at least some of them,—evidence transactions which would not tend to prove the appellants were guilty of the commission of a crime. By reason of the fact, therefore, that some of the books, etc., of said corporation in the hands of the appellants might show guilt and others might not furnish evidence of criminal misconduct, the fact that some would tend to incriminate them would be no reason for their withholding other books, papers, documents, etc., from the receiver which would in no way tend to incriminate them. We think their answer should therefore have pointed out, from the numerous books and documents in their hands, such books and documents as were incriminating in their character and accompany their answer by an offer to turn over to the receiver the remaining books, etc., in their possession. Such seems to be the practice with reference to the discovery and inspection of documents which are privileged, and we can see no reason why the rule thus established should not be applied to a case like this, if the constitutional privilege contended for by the appellants can be invoked in a case like this, which question we will consider hereafter in this opinion. In Elliott on Evidence, (vol. 4, chap. 162, sec. 3289,) that author says: "The adverse party cannot be required to produce documents which are privileged. If he claims any document in his possession to be privileged he must so state in his affidavit, and must specify which, if any, of the documents referred to is the document he objects to producing, stating fully upon what grounds the objection is based and as far as possible verify the facts upon which the objection is founded. It

has been held that an affidavit is insufficient which merely states that the documents are privileged. The facts must be stated under oath on which the claim of privilege is made. These must be so stated that the court may determine, from the facts set out, whether or not the document is privileged." In *People* v. *Butler Street Foundry Co. supra,* on page 248, this court quoted with approval the following excerpt from *Brown* v. *Walker, supra,* where it was said: "The constitutional privilege is not, however, to be so far extended that it may be put forward for a sentimental reason or for a purely fanciful protection of the witness against an imaginary danger, and for the real purpose of securing immunity to some third person who is interested in concealing the facts to which he would testify." Our conclusion is, upon this branch of the case, that the trial court did not err in holding that the appellants' answer was not sufficient to excuse them from turning over to the receiver the books, etc., of said corporation in their possession.

We have proceeded thus far on the theory of the appellants, which is, that they can claim their constitutional privilege in this proceeding the same as they could had they been subpœnaed as witnesses to give evidence or been required by subpœna *duces tecum* to produce the books, etc., of the corporation of which they were officers, before a petit or grand jury in a case pending in court or under investigation before a grand jury. We do not think, however, the position of appellants that they can claim their constitutional privilege in this proceeding in the same manner that they could were they called as witnesses or called upon by a subpœna *duces tecum* to produce books, etc., correct. It is apparent that a party called to give evidence as a witness or to produce in court, to be used in evidence, the books, etc., of a corporation of which he is in possession as its officer, is in entirely a different situation from what an officer of an insolvent corporation is who is di-

242—38

rected by the court in which the affairs of the corporation are being wound up, and to which proceeding he is a party, to turn over the books, etc., of the corporation in his possession to a receiver of the corporation. In one case the party is required to produce the books, etc., of the corporation to be used as evidence, and in the other case the court is granting to the complainant the relief prayed for in his bill; and while a court of equity will not force a party to subject himself to punishment for a criminal offense, it will not permit him to protect himself against equitable relief by alleging that if he answers the bill filed against him or turns over to a receiver property belonging to an insolvent corporation of which he is an officer he will subject himself to the consequences of a crime. (Story's Eq. Pl. sec. 525.) In this case the complainants by their bill made a case against the appellants and the corporation of which they were officers which entitled them to equitable relief, a part of which relief was to have turned over to the receiver of the corporation the books, etc., of said corporation. If an officer of a corporation could, by claiming that the books, etc., of the corporation in his possession contained evidence of his criminal misconduct in the management of the affairs of the corporation, prevent the receiver of the corporation from obtaining the possession of the books, etc., of the corporation which were necessary for him to have in order to properly administer the affairs of the corporation and close up its business under the direction of the court, such officer would have the power, in effect, to deprive a court of equity of jurisdiction to close up the affairs of an insolvent corporation by declining to deliver possession of the books, etc., of the corporation to the receiver appointed by the court. We are of the opinion that while the appellants could not be called upon to explain any of their conduct as officers of said Mercantile Securities Company which would tend to incriminate them, they could be required by the court to turn over to the

receiver the books, etc., of the corporation. *Tolleson* v. *Greene,* 83 Ga. 499.

The possession of a receiver is the possession of the court making the appointment, the property being regarded, while in the hands of the receiver, as in the custody of the law. The receiver's possession, therefore, is neither adverse to the complainant nor to the defendant in the litigation, but the possession of the property is in the court, through its receiver, where it must remain for the protection of all parties in interest until the court disposes of the possession by ordering the receiver to sell the property or to turn it over to the party to whom it may ultimately be found to belong. (High on Receivers, sec. 134.) If, therefore, the books, etc., turned over to the receiver under the order of the court entered in this case should, upon examination by the court, be found to contain evidence which would incriminate appellants, the appellants could be fully protected by the court from the use of such evidence against them while the books, etc., are in the hands of the receiver and under the direction of the court. Where books and other documents are produced upon the service of a subpœna *duces tecum* they are brought directly into court to be used as evidence, while books, documents and other papers turned over to a receiver under the direction of the court remain in the custody and control of the court, and could not be used as evidence against the party turning them over except by the order of the court whose receiver had them in his possession. "A bare possibility of legal peril" is not sufficient to entitle a witness to protection, and as there is no reasonable probability of the defendants being deprived of their constitutional rights they were not excused from obeying the order of the court. *People* v. *Butler Street Foundry Co. supra; Brown* v. *Walker, supra; Regina* v. *Boyes, supra.*

It will be observed that all the cases cited by the appellants to sustain their contention that their constitutional

privilege would be infringed by being required to surrender said books to said receiver are cases where a witness was required to testify or to produce books and papers in court to be used in evidence, notably the case of *Lamson* v. *Boyden, supra, Counselman* v. *Hitchcock, supra,* and *Boyd* v. *United States,* 116 U. S. 616,—all of which cases are clearly distinguishable from the case at bar.

After the order had been entered finding the appellants to be guilty of contempt of court and committing them to the county jail of Cook county, they prayed an appeal from that order to the Appellate Court for the First District and gave bond in accordance with the order allowing the appeal. While that order was in force, John C. Fetzer, as receiver, applied to the circuit court for an order of sequestration against the property of the appellants, which order was made and a writ of sequestration was issued. Subsequent to the issuing of the writ the order allowing the appeal to the Appellate Court was set aside by the trial court, and thereupon a writ of error was sued out from this court to review the action of the trial court in granting said order of sequestration against the appellants' property. It is contended that the court erred in granting said writ while the appeal was pending in the Appellate Court from the order committing the appellants to the county jail of Cook county for contempt of court. The writ of sequestration is said to have been introduced as a process in chancery proceedings by Sir Nicholas Bacon in the reign of Elizabeth and that it was brought to the United States with the chancery system of England, and that its office in equity practice is to furnish a remedy by which property is taken possession of by a court of chancery in order to enforce obedience to a decree, and that while the writ has gone almost out of use since the courts of chancery have power to issue executions against real estate to enforce the payment of chancery decrees, it has not been abolished or prohibited and may be resorted to whenever it is deemed

necessary. (19 Ency. of Pl. & Pr. 540.) The writ of sequestration is recognized by sections 42 and 47 of the chancery code of this State, and it was invoked with effect in the case of *Wightman* v. *Wightman*, 45 Ill. 167, where it was used to enforce the payment of alimony where the defendant was contumacious and refused to pay alimony although he had an estate, and was committed to jail for a failure to pay alimony. The writ of sequestration in chancery runs against the property of a contumacious defendant and is a proceeding *in rem*, while a contempt proceeding is against the person of a contumacious defendant and is *in personam*. The chancery code of this State, as was the case in the chancery practice of England, provides for those two methods of enforcing a chancery decree, and the fact that the appellants had prosecuted an appeal in the contempt proceedings which they afterwards abandoned did not prevent a resort to the writ of sequestration to enforce obedience to the order of the court to turn over the books, etc., of said corporation to the receiver. (*Blake* v. *Blake*, 80 Ill. 523; Rev. Stat. chap. 22, secs. 42, 47.) The remedies are concurrent and alternative.

It is next urged that the order for the writ of sequestration was improperly made, as it is said it deprived the appellants of their constitutional rights under sections 6 and 10 of article 2 of the constitution of this State and the fourteenth amendment to the constitution of the United States. As we have seen, the surrender of the books, etc., of the Mercantile Securities Company to its receiver by the appellants was not a deprivation of their constitutional rights, either State or Federal. The bill filed by the complainants charged that Birch F. Rhodus, Thomas Rhodus and Edward T. Rhodus, individually and through the corporations owned and controlled by them, had appropriated the common stock of the Mercantile Securities Company, $1,250,000 in amount, and had appropriated to their own use more than $300,000 of the proceeds of the sale of its

preferred stock, and the appellants admitted they were in possession and control of all of the books of account, papers, documents, correspondence, stock books, stock register, check books, canceled checks and other papers, of whatsoever kind and character, of the said Mercantile Securities Company, but refused to obey the order of the court to turn them over to the receiver of said corporation on the ground that the turning over of said books, etc., to said receiver "might tend to incriminate" them, and when adjudged guilty of a contempt of court they appealed from that order, the result of which was to leave them in the possession of all the books, etc., and assets of said Mercantile Securities Company, without any security that said books, etc., and assets of the corporation would be forthcoming in case it should be adjudged it was their duty to obey the order of the circuit court requiring them to turn over said books, etc., to said receiver, from which decree no appeal had, ever been prayed or perfected. We think that the trial court therefore properly issued the writ of sequestration against the property of the appellants, to the end that the decree of the circuit court requiring them to turn over to said receiver said books, etc., might not be defeated and rendered fruitless in case it was finally held the appellants were bound to obey said decree.

The judgment of the circuit court in adjudging the appellants guilty of a contempt of court, and the judgment of the circuit court awarding the writ of sequestration, will be affirmed.                *Judgments affirmed.*

Mr. Justice Cartwright: I agree with the conclusion reached in this case for the reason that the answer of the defendants was not sufficient to show that the books and papers they were ordered to turn over to the receiver contained evidence which would tend to incriminate them.

Farmer, C. J., and Vickers, J., dissenting.