## People of the State of Illinois, Appellants, v. Walter W. Furey and Indemnity Insurance Company of North America, Appellees.

### Gen. No. 9,564.

608

filed September 19, 1940. Rehearing denied November 5, 1940.

HUNTER, KAVANAGH & McLAUGHLIN, of Peoria, for appellants.

BARTLEY & YOUNGE, of Peoria, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

On July 12, 1933, the circuit court of Peoria county in a dissolution proceeding then pending in that court, appointed Walter W. Furey receiver for the Illinois Valley Trust Company and fixed the amount of his bond at $50,000. Subsequently Mr. Furey qualified and his bond, with the Indemnity Insurance Company of North America as surety, was duly approved by the court. On the following day the circuit court entered an order in said liquidation proceeding to the effect that every person having a claim against the Illinois Valley Trust Company should file with the said Walter W. Furey, as receiver, at his office at 1203 Jefferson Building, Peoria, Illinois, on or before January 1, 1934, written proof under oath of any such claim. Notice of this order was thereupon mailed by the said Walter W. Furey, receiver, to all the creditors of said Trust Company including the Commercial Merchants National Bank and Trust Company of Peoria as conservator and ex-officio administrator of the estate of Emma R. Drouin, deceased, and to Grace B. Wead, as an individual and to the said Commercial Merchants

National Bank and Trust Company and the said Grace B. Wead as trustees of the S. D. Wead estate trust all being creditors of said Illinois Valley Trust Company. At the time the receiver took charge of this Trust Company it was indebted to the estate of the said Emma R. Drouin, deceased in the sum of $3,181.16 and to the S. D. Wead estate trust in the sum of $6,312.13 and to Grace B. Wead individually in the sum of $2,011.64.

At the time of his appointment as receiver and continuing thereafter, Walter W. Furey was employed in the office of Hiram Walker & Sons in the Jefferson Hotel in Peoria and shortly after his appointment as receiver he opened an office at No. 1203 Jefferson Building, Peoria and employed Patrick J. Ryan and two other persons to assist him in transacting his business as receiver. On December 27, 1933, Ray Belsley, as agent for the three creditors above named, went to No. 1203 Jefferson Building and there found the said Patrick J. Ryan, one of Mr. Furey's employees, in charge. Mr. Belsley inquired where Mr. Furey could be found and was informed that Mr. Furey was at the office of Hiram Walker & Sons in the Jefferson Hotel. Belsley immediately went there and met Mr. Furey in his office where he was sitting behind a desk. Belsley handed him the three separate claims hereinafter referred to and asked Mr. Furey for a receipt for the same and Furey receipted for them on the duplicate copies which Belsley tendered to him. Mr. Furey at that time indorsed on each duplicate copy of said claims in his own handwriting the following: "Received copy December 27/33. W. W. Furey." Mr. Furey retained the original claims and returned the duplicate copies so indorsed to Mr. Belsley. Mr. Belsley said nothing as to the nature of the instruments he was presenting to Mr. Furey and Mr. Furey made no inquiry of Mr. Belsley as to their character.

On June 26, 1934, the circuit court referred the question of the allowance of claims to the master in chan-

cery and directed the master to give notice to all creditors of the time and place where proof would be taken. Following the entry of that order the receiver submitted to the master a list of claims filed with him and the amounts thereof, but no claim on behalf of any of appellants was submitted. In due course the master reported as to the allowance of claims and his report was approved by the court and a dividend of 25 per cent was ordered paid to the general creditors. In this order the court provided that the only persons, firms or corporations having claims against the Illinois Valley Trust Company were those listed in that order and that all other persons, firms or corporations were forever barred and enjoined from making or prosecuting any claim or claims against the trust company or its receiver or its assets in the hands of the receiver, or from instituting or prosecuting any suit against the corporation or its receiver on account of any claim. Thereafter the receiver paid the dividend of 25 per cent to the general creditors whose claims had been allowed and on June 20, 1935, filed his final report with the court, showing that he had collected all of the assets of the corporation, and had distributed the same in accordance with the orders of the court. On July 3, 1935, this final report of the receiver was approved and an order entered discharging him from any further duty or responsibility as receiver of the Illinois Valley Trust Company and dissolved that corporation.

On October 19, 1936, the instant complaint was filed. It consisted of three counts, the first count being the complaint of the Commercial Merchants National Bank and Trust Company of Peoria as conservator and ex-officio administrator of the estate of Emma R. Drouin, deceased; the second count is the complaint of Grace B. Wead and the Commercial Merchants National Bank and Trust Company of Peoria as trustees of the S. D. Wead estate trust and the third count is the complaint of Grace B. Wead as an individual. The suit is brought

in the name of the People for the use of these several plaintiffs and against Walter W. Furey and Indemnity Insurance Company of North America upon the official bond of the receiver. The defendants answered the complaint and after the issues had been made up a jury was waived and the cause submitted to the court for determination, resulting in a judgment in favor of the defendants in bar of the action and against the plaintiffs for costs and it is from this judgment that an appeal has been prosecuted.

The sole question for determination is whether appellants complied with the order of the circuit court entered on July 14, 1933, when they, on December 27, 1933, by their agent and representative, Ray Belsley, delivered to Walter W. Furey, the receiver, at his office in the Jefferson Hotel in Peoria the several claims of appellants and took from him his receipt therefor.

It is conceded by counsel that if the claims of appellants had not been forgotten and overlooked by the receiver they would have been allowed in full and upon the hearing it was stipulated that the receiver did not enter the three claims on his books, nor list them as claims nor present them to the master in chancery for allowance or disallowance; that he never filed any objections thereto or fixed upon any time for hearing thereon, nor did he or the master ever give any notice to appellants of a time for hearing on their claims; that in the closing up of the affairs of the corporation and in the payment of dividends to creditors, no cognizance was taken of these claims; that appellants were not parties to the receivership proceedings and were involved only to the extent that they were creditors of the corporation and as such creditors received notice from the receiver to file their claims, according to the order of the court.

If the claims of appellants had not been forgotten and had been allowed in full, the dividend that would have been paid general creditors would have been

twenty-three per cent (23%) instead of twenty-five per cent (25%) of their claims and the Commercial Merchants National Bank and Trust Company as conservator and ex-officio administrator of the estate of Emma R. Drouin would have received on its claim the sum of $731.53. The trustees of the S. D. Wead estate trust would have received on their claim the sum of $1,451.76 and Grace B. Wead individually would have received upon her claim the sum of $462.53, which several amounts would have been paid appellants by the receiver on or before June 20, 1935.

The Illinois Business Corporation Act provides, among other things, that in proceedings to liquidate the assets and business of a corporation the court may require all creditors of the corporation to file with the clerk of the court or with the receiver proofs under oath of their respective claims. Ill. Rev. Stat. 1939, ch. 32, sec. 89 [Jones Ill. Stats. Ann. 32.091]. This statute authorized the court to require all creditors to file their claims either with the clerk of the circuit court or with the receiver. In the instant case the court designated the receiver and in its order required the creditors to file their claims with him at his office at No. 1203 Jefferson Building, Peoria.

Counsel for appellees argue that these claims were not filed as required by the order of the circuit court until they were actually marked filed by the receiver or his employees and lodged in the office designated in that order as the office of the receiver. In support of this contention they cite, among other cases, *Hamilton v. Beardslee,* 51 Ill. 478 and *Brelsford v. Community High School Dist. No. 36,* 328 Ill. 27. The *Brelsford* case was an election contest and the petition was dismissed because the court held that leaving the petition to contest an election with the deputy circuit clerk at her home was not a compliance with the statute which provided that such petition should be filed in the circuit or superior court. In *Hamilton v. Beardslee,*

*supra,* it was held that placing a declaration on the table of the clerk of the superior court in his office did not comply with the statute that required it to be filed with the clerk of the superior court. In its opinion that court said: "to file a paper in a cause, it must be placed in the hands and under the control of the clerk. It must pass into his exclusive custody and remain within his power. Not only so, but the purpose and object is to render it a part of the records of his office, and that object must be communicated to him in some manner capable of being understood. We do not say that it should or could be alone communicated by language written or verbal, but that he must, in some mode or other, be informed that the party intends and desires it to be filed."

We have examined the other cases cited and it should be noted that in all of them the rights of third parties who had a right to rely upon the records of a statutory office were involved. It is insisted here by counsel for appellees that since the order directing the filing of claims referred to No. 1203 Jefferson Building, that the office there located became the official office for the filing of claims. The order, however, does not provide that claims shall be filed at the office of the receiver or with the receiver at his office or with the receiver at his office as receiver. What the order provides is that every person having a claim shall file it with Walter W. Furey, as receiver, at his office at No. 1203 Jefferson Building. The evidence is that appellants took their claims to the office located at No. 1203 Jefferson Building and made inquiry for Walter W. Furey. He was not there but his employees who were there and in charge of the office informed the agent of appellants where he could be found and the agent of appellants forthwith went to the place where he was so directed to go and he there found Walter W. Furey, the receiver. It was during business hours and Mr. Furey was in his office sitting behind a desk. There and then appellants presented and de-

livered to him their claims. Walter Furey, the receiver accepted them and acknowledged in his own handwriting the receipt thereof. He was the only person with whom these claims could have been filed in compliance with the order of the circuit court. The fact that he was not at No. 1203 Jefferson Building, but was, at that time, in his own office at the Jefferson Hotel should not preclude appellants from insisting that they have complied with the spirit of the order of the circuit court. It seems to us that in accepting these claims at the time and place where he did, the receiver must be held to have waived that portion of the order of the circuit court which designated the receiver's office as No. 1203 Jefferson Building.

In *J. B. Orcutt Co. v. Green,* 204 U. S. 96, it appeared that Ingalls Bros. had been adjudicated bankrupts on Dec. 3, 1902. Section 57, sub-section n of the Bankruptcy Act provided that claims could not be proved against a bankrupt estate subsequent to one year after an adjudication in bankruptcy, and a portion of the 21st general orders in bankruptcy provided that proofs of debt received by any trustee should be delivered to the referee to whom the case is referred. On April 1, 1903, the J. B. Orcutt Co., duly verified its proof of claim and shortly thereafter delivered it to the trustee. The trustee neglected to deliver it to the referee and this claim together with two other claims, was found in a package of papers relating to another bankruptcy proceeding sometime after the year had expired for filing claims in the *Ingalls* case. On April 2, 1904, a petition was filed in the district court for leave to file each of said claims *nunc pro tunc* as of a date prior to December 3, 1903. Other creditors of the bankrupt objected on the ground that the claims had to be seasonably presented to the court and were barred under the provisions of the bankruptcy act. In affirming the judgment of the district court which directed that the claims should be filed as of the date when delivered to the trustee and in revers-

ing the judgment of the circuit court of appeals, which held otherwise, the United States Supreme Court construed the 21st general order in bankruptcy to mean that proofs of debt may be received by the trustee and that when so received by him, such claims·are, in legal effect, received by the court, whose officer the trustee is, and having been received by the trustee, under authority of law, the proofs of debt are thereby sufficiently filed so far as creditors are concerned and that it is the duty of the trustee then to deliver the claims to the referee. In·its opinion the court said: ''If the trustee inadvertently neglects to perform that duty it is the neglect of an officer of the court, and the creditors are in no way responsible therefor. The presentation and filing have been made within the time provided for and with one of the proper officers and his failure to deliver to the referee cannot be held to be a failure on the part of the creditor to properly file his proofs.''

The *Orcutt* case does not decide the exact question presented for decision in the instant case but what the court there said is applicable here. Under the facts and circumstances as shown to have existed at the time these claims were delivered to the receiver, their presentation and delivery to him in person, must be construed as a filing within the meaning of the order entered by the circuit court in the liquidation proceedings of the Illinois Valley Trust Company. When Walter W. Furey qualified as receiver of that company, he became an officer of the circuit court and the assets of the company, while in his hands, as receiver, were in the possession of the court for the benefit of its creditors, stockholders and all parties in interest. (*Manning v. Mercantile Securities Co.*, 242 Ill. 584), and when he received these claims, they were, in legal effect received by the court, whose officer he was, and having been received by him, under the authority of the court, these claims were sufficiently filed so far as creditors were concerned and it was the receiver's duty to take

them into consideration and treat them as other claims in winding up the affairs of the company, of which he was receiver. It is unfortunate that he inadvertently neglected to perform that duty, but his neglect was the neglect of an officer of the court for which appellants are in no way responsible. The receiver's failure to take the claims into consideration in the final liquidation of the company, cannot be held to be due to a failure on the part of the appellants to properly file their claims.

The judgment appealed from is reversed and this cause is remanded to the circuit court of Peoria county with directions to that court to render judgment for each appellant for the stipulated amount due each appellant together with interest thereon from June 20, 1935.

*Reversed and remanded with directions.*