ALFRED POMEROY, INDIVIDUALLY AND AS A COPART-
NER OF SELWYN-POMEROY CO., A PARTNERSHIP,
SAUL FISCHBEIN AND KARL GREEN, PLAINTIFFS-
RESPONDENTS, v. HARRY SIMON, ARTHUR J. SIMON,
EDWARD H. SIMON AND HELEN SIMON, INDIVID-
UALLY AND AS PARTNERS TRADING AS EAGLE
BUTTON COMPANY, DEFENDANTS-APPELLANTS.

Argued September 27, October 4, and November 8, 1954—
Decided December 20, 1954.

*Mr. Max L. Rosenstein* argued the cause for appellants.

*Mr. Adrian M. Unger* argued the cause for respondents (*Mr. Sam Denstman*, on the brief; *Messrs. Milton M. and Adrian M. Unger*, attorneys).

The opinion of the court was delivered by

HEHER, J.   The essential question here is whether the plaintiff corporate shareholders may have recourse to the Attachment Act, *N. J. S.* 2A:26–1 *et seq.*, in a stockholders' derivative action against nonresident officers and directors of the corporation for the construction and rescission of a sales agency agreement allegedly procured from the corporation by fraud and used by defendants to mulct the corporation for their own enrichment, and for an accounting and damages.

An attachment issued on the basis of a factual presentation by affidavit.   Service and execution of the writ were followed by a complaint making the allegations of fact verified by the affidavit.   The denial of a motion to quash the writ of attachment, to vacate the levy made thereunder, and to dismiss the action for want of jurisdiction was sustained

by the Appellate Division, *29 N. J. Super.* 439 (1954); and the case is here by certification at the instance of defendants. *15 N. J.* 496.

The contention is that the basic affidavit disclosed neither the "relationship of debtor and creditor" nor "any privity from which such relationship could spring," and the issuance of the attachment was *coram non judice*. The insistence is that the corporate stockholders, acting in this derivative capacity for the protection of the corporate body, are "neither creditors nor claimants" within the contemplation of the Attachment Act.

Plaintiffs bring this suit in equity on behalf of themselves and all other stockholders of Tho-Ro Products, Inc., a New Jersey corporation, and the corporate entity itself. Tho-Ro manufactures at Carlstadt, New Jersey, plastic sheets and materials from which synthetic buttons are stamped and readied for the market. Its stockholders are in two factions: one group comprises the plaintiffs Pomeroy, Fischbein and Green, all nonresidents, the holders of a majority of the issued shares of stock; the other is composed of Harry Simon, Arthur J. Simon, Edward H. Simon and Irving Thor. Harry Simon and Arthur J. and Edward H. Simon, who are his sons, and Harry's wife, Helen Simon (who holds no stock in Tho-Ro) are all residents of New York and comprise the New York partnership doing business as Eagle Button Company. Irving Thor holds 17½ shares of Tho-Ro's common stock, and is an officer and director of the corporation; Harry Simon holds 24 2/3 shares of the common stock and 88 8/9 shares of the preferred stock, and is president of the corporation and the surviving voting trustee under a voting trust agreement made by Tho-Ro's stockholders which enabled him, it is said, to "arrogate to himself the entire control and management of the corporation's business and affairs," and thus to negotiate the sales agency agreement by which, it is claimed, he "drained off into his pockets and into the coffers of his family partnership the profits and assets of Tho-Ro." Arthur J. Simon and Edward H. Simon each holds five shares of the common stock.

The affidavit tendered to invoke the attachment process, made by Fischbein "on behalf of" himself and the other individual plaintiffs, charged that Harry Simon "is not only the dominant and controlling partner in Eagle, but is also the president and one of the directors and the surviving trustee of Tho-Ro"; that on or about June 9, 1949 the individual defendants, as partners trading as Eagle Button Company, "purportedly entered into a written agreement wherein and whereby it was agreed" that Eagle "would act as the sales agent for buttons produced by Tho-Ro," for a commission of 20% "of the sales made," "purportedly entered into pursuant to a resolution" adopted by Tho-Ro's directors "authorizing the making of the contract for a period not to exceed three years"; that Harry Simon, then and now president of Tho-Ro, "knowingly made false, misleading and fraudulent misrepresentations to the other officers and directors of Tho-Ro" in relation to the "cost of operating a sales organization for the sale of Tho-Ro's buttons," therein particularized, "all in violation of and in breach of Simon's duties and obligations as a director of Tho-Ro," and the consequence was an agreement for the "sale of Tho-Ro's buttons at grossly excessive rates to Eagle," and defendants, as the partners comprising Eagle, were "enabled to make unconscionably high profits to the detriment of Tho-Ro and its stockholders"; that certain sales costs and expenses assumed by Eagle under the agreement were charged to Tho-Ro; that Harry Simon converted to his own use "or the use of himself and his copartners" in Eagle 40,000 gross of buttons, the property of Tho-Ro, "without payment of compensation therefor," and there were diversions of assets of Tho-Ro in the form of commissions "on sales of items other than buttons in violation of the sales agreement"; that although the sales agreement "has expired," defendants "have, through their position of dominance, continued to operate and pay themselves exorbitant commissions thereunder"; that the "defendant copartners have wrongfully taken and received assets of Tho-Ro, which, on information and belief, amount to or are valued at

$250,000"; and that Harry Simon, as president and director of Tho-Ro and voting trustee under the purported voting trust agreement, has taken unto himself the control and management of Tho-Ro's affairs, and he "will not seek redress of the foregoing grievances," and the "controlling directors" have rebuffed plaintiffs' efforts to "secure action," and so it became necessary for plaintiffs, representing a majority of the outstanding stock, to institute this suit for appropriate relief.

The right of a corporate stockholder to prosecute a derivative action on behalf of the corporation does not rest in contract; it is not a personal right of action but rather a proceeding, essentially equitable in nature, to redress a breach of fiduciary duty by the officers and directors of the corporation. At common law, and by the modern current of authority in this country and in England, the directors of a private corporation, while not regarded as trustees in the strict, technical sense (for title to the corporate property is in the corporation itself and not in the directors), are yet considered in equity as bearing a fiduciary relation to the corporation and its stockholders. The relationship has two facets: agency in the normal sense, and a trusteeship in relation to the corporate moneys and property, if not, indeed, the exercise of corporate powers generally. They are *quasi* trustees for the stockholders. At least until insolvency occurs, the latter alone comprise the *cestuis que trust*. *Whitfield v. Kern*, 122 *N. J. Eq.* 332, 340 (*E. & A.* 1937). A derivative action such as we have here is designed to redress the wrongs to the corporation itself from managerial fraud, mismanagement or other breach of trust; and in a sense it is a "class action." The suit proceeds upon a cause of action "resting wholly in the corporation, the stockholder complainant does no more than set in motion and contribute to the prosecution of a suit for the benefit of the corporation which otherwise could not be properly prosecuted." *Busch v. Mary A. Riddle Co.*, 92 *N. J. Eq.* 265 (*E. & A.* 1920); *Escoett v. Aldecress Country Club*, 16 *N. J.* 438 (1954). See also *Beneficial Industrial Loan Corporation v.*

*Smith,* 170 *F. 2d* 44 (*3rd Cir.* 1948), affirmed *sub nom. Cohen v. Beneficial Industrial Loan Corporation,* 337 *U. S.* 541, 69 *S. Ct.* 1221, 93 *L. Ed.* 1528 (1949).

■ But it is not requisite to maintain a suit in attachment that in all cases the adverse parties sustain as to each other the relation of "debtor and creditor" in the technical sense. This is not now a statutory *sine qua non.*

The Attachment Act, *N. J. S. 2A:26-2(d),* authorizes the issuance of an attachment upon the petition of a resident or nonresident plaintiff against the property of a defendant in these circumstances: "Where plaintiff has a claim of an equitable nature as to which a money judgment is demanded against the defendant, and the defendant absconds or is a nonresident and a summons cannot be served upon him in this state." This provision was introduced into the Attachment Act by *L.* 1948, *c.* 358, *p.* 1432. The old law is to be found in *R. S.* 1937, 2:42-1 to 5; it had no comparable provision.

There is a legislative direction, *N. J. S. 2A:26-1,* that the current act be liberally construed, as a remedial law for the protection of resident and nonresident "creditors and claimants"; and the plaintiffs here are within that category, for the cause of action pleaded is the corporation's, to redress the breaches of fiduciary duty laid to its officers and directors which, for that very reason, would go without remedy were it not for the stockholder's intervention.

*Subsection (d)* of *N. J. S. 2A:26-2, supra,* derives from and supersedes *R. S.* 1937, 2:29-88 *et seq.,* the old Chancery Act, which subjected the "property of nonresidents to the satisfaction of claims cognizable in a court of equity in analogy to attachment proceedings at law," repealed by *L.* 1948, *c.* 358, *p.* 1445, § 45, effective September 15, 1948, when the Judicial Article of the Constitution of 1947 became operative. The statutory attachment process is implemented by *R. R.* 4:77-3 *et seq.,* formerly *Rule* 3:72-3, *et seq. R. R.* 4:77-7 declares that "writs of sequestration or proceedings in the nature thereof" are superseded except to enforce a "judgment or order of the court."

■ The writ of sequestration had its genesis as a *mesne* process of attachment in the English chancery, *Re Suarez* (1918) 1 *Ch*. 176, 9 *B. R. C.* 1021–*C. A.*, also 24 *Eng. Rul. Cas.* 40; and whatever its limitations at the outset, the proceeding in lieu thereof now takes its character and essential quality from the current Attachment Act and the superseded statute. *Republic of China v. Pong-Tsu Mow*, 15 *N. J.* 139 (1954); *White v. White*, 16 *N. J.* 458 (1954); *Ippolito v. Ippolito*, 3 *N. J.* 561 (1950). See also *Manning v. Mercantile Securities Co.*, 242 *Ill.* 584, 90 *N. E.* 238, 30 *L. R. A., N. S.*, 725 (*Sup. Ct.* 1909), affirmed *Rhodus v. Manning*, 217 *U. S.* 597, 30 *S. Ct.* 696, 54 *L. Ed.* 896 (1910); *Geary v. Geary*, 272 *N. Y.* 390, 6 *N. E.* 2d 67, 108 *A. L. R.* 1293 (*Ct. App.* 1936).

■ And so, the contention that the attachment permissible in equity is by analogy invocable only where the "status of creditor" exists is without substance. Apart from other considerations, it ignores the significance of the associate word "claimants" in the definition of the statutory category. And we repeat that the claimant here is in reality the corporation, not the plaintiff stockholders who are not seeking the enforcement of a personal right of action.

■ Adverting now to the point that the attachment against the nonresident defendant Arthur J. Simon "affected his wages as an employee of the nonresident partnership," Eagle, contrary to *N. J. S.* 2*A* :26–5, and so the attachment and levy and the "exercise of jurisdiction over" him "were all invalid," it is enough to say that partnership assets were also attached and jurisdiction of this defendant is thus sustained.

On the original argument of the cause, it was shown that on July 14, 1954 personal service of process was made in New Jersey on the defendants Harry Simon and Helen Simon; and the hearing of the appeal was continued pending determination by the Superior Court of the sufficiency of the service as to the partnership. Judge Grimshaw concluded that by this service "jurisdiction was secured over the partnership for the purposes and to the extent set forth

in the complaint." We were later advised by counsel for the defendants that the order so made would not be appealed, and no appeal has been taken; but in view of the rights acquired by plaintiff under the attachment, the proceeding is not for that reason subject to dismissal.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.