VIRGINIA A. HOFFMAN, PLAINTIFF-RESPONDENT, v. ALFRED T. HOFFMAN, DEFENDANT-APPELLANT, AND THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, GARNISHEE IN ATTACHMENT-APPELLANT.

Argued October 15, 1951—Decided November 12, 1951.

158

*Mr. William A. Lord, Jr.,* argued the cause for the defendant-appellant.

*Mr. John J. Monigan, Jr.,* argued the cause for the garnishee in attachment-appellant (*Mr. William L. Dill, Jr.,* on the brief; *Messrs. Stryker, Tams & Horner,* attorneys).

*Mr. Milton H. Goldberger* argued the cause for the plaintiff-respondent (*Messrs. Cyrus J. Bloom* and *William Rossmore* on the brief; *Messrs. Gross & Blumberg,* attorneys).

The opinion of the court was delivered by

BURLING, J.   This involves two appeals on an agreed statement in lieu of record under *Rule* 1:2–22 addressed to the

Appellate Division of the Superior Court and certified before hearing there by this court on its own motion. The appeals seek review of a final judgment of the Essex County District Court in attachment proceedings, in favor of the plaintiff Virginia A. Hoffman (hereinafter referred to as the plaintiff), and are brought by the defendant Alfred T. Hoffman (hereinafter referred to as the defendant) and The Prudential Insurance Company of America, a New Jersey corporation (hereinafter referred to as the garnishee).

The agreed statement in lieu of record above adverted to shows among other things the following: The plaintiff, a resident of California, recovered a final judgment of divorce on January 31, 1939, in the Superior Court of the State of California by the terms of which it was decreed that the defendant was to pay to the plaintiff $50 on the first and $50 on the fifteenth day of each month for plaintiff's support and maintenance. The defendant, a non-resident of New Jersey, was an employee of the General Foods Corporation and as such was insured under a certain group insurance contract made by and between defendant's said employer and the garnishee. In this contract there was a provision which reads as follows:

"The Active Employee's or Annuitant's Certificate and the Retirement Annuity Benefits and other payments provided under this Contract are non-assignable, whether by voluntary act or by operation of law, * * *"

In the certificate issued to the defendant under that policy there appeared a similar provision, namely:

"The Retirement Annuity payments and any payment upon the death of the Annuitant, referred to herein, are non-assignable whether by voluntary action or by operation of law."

The defendant retired and pursuant to the retirement benefit terms of this contract and certificate, the garnishee became obligated to pay to the defendant $138.84 on December 1, 1949, and thereafter a like sum on the first day of each month throughout the lifetime of the defendant. Payments

to the defendant were so made on the first day of each month from December 1, 1949, to June 1, 1950. On June 2, 1950, the writ of attachment involved in this appeal was issued by the clerk of the Essex County District Court at the instance of the plaintiff. The action so instituted by her was brought to recover alleged arrearages in alimony claimed by her by virtue of the California decree hereinafter mentioned. The arrearages claimed were for the months of December, 1949, and January through June, 1950, inclusive. On July 19, 1950, the clerk of the aforesaid Essex County District Court entered a judgment in favor of the plaintiff and against the defendant on proof of affidavit. A *scire facias* was thereafter issued summoning the garnishee to show cause why the plaintiff should not have execution against it; the adjourned date of the hearing on the said writ was February 26, 1951. The defendant on that date moved to set aside the judgment and quash the attachment for various procedural and jurisdictional reasons and for the reason that the property sought to be attached was not subject to attachment. The garnishee joined in these motions. On April 23, 1951, the Essex County District Court entered judgment in favor of the plaintiff and against the defendant and the garnishee in the amount of $600 (reduced by the trial court from $700 to conform to the writ of attachment) and costs. The defendant and garnishee instituted these appeals which, as previously stated, reach this court by certification on our own motion.

The primary question submitted to the court for decision on these appeals is whether payments under this group insurance policy with annuities payable to a man after retirement who is not a resident of this State, are subject to attachment by his former wife to pay accrued alimony under a judgment or decree of a court in a foreign state, the wife also being nonresident here, where the terms of the annuity policy prohibit assignment by voluntary act or by operation of law.

The right of a judgment creditor in an action upon attachment is a derivative one. The obligation of the garnishee to the principal debtor was circumscribed by the contract of

insurance between the employer and the garnishee. By clear and positive language the garnishee excluded an obligation to pay annuity benefits to anyone other than the annuitant. To permit the plaintiff to reach the annuity benefits clearly violates that contractual undertaking. To accept the contention of the plaintiff would require the court to make a new contract for the parties—one which is contrary to the express undertaking of the garnishee in the agreement. One of the purposes of a provision against assignment is to protect the insurance company from the necessity of dealing with persons other than those named in its policy and of determining at its peril which of several claimants may be entitled to the fund. Especially is it so in cases providing for regular periodical payments and, as in this case, monthly periods. The point is obvious, for instance, in this case where it is asserted that proceedings in attachment are out of the course of the common law and must be strictly construed and that under applicable law annuity payments and especially prospective ones have not been subjected to attachment. Unless the plan adopted in the insurance contract was in violation of public policy, it must be upheld. There is no specific statute relating to such an exemption in this State. The public policy to be considered in this case relates to the question whether as a social security measure the proceeds of group insurance policies for retirement purposes may be exempted from legal process to secure the employee against impoverishment. See *Crawford on Group Insurance* (1936), *sec. 60, pages* 149, 150.

We are of the opinion that the provisions of the group insurance contract involved in this litigation were valid and enforceable and were not violative of any common law, constitutional or statutory provision, and the judgment of the trial court should be reversed and the attachment dismissed.

Our first inquiry is as to the nature of the group insurance policy in question which by its terms contained a retirement annuity in effect a pension plan. We are referred to the case of *Seventy First Street & Broadway Corp. v. Thorne*, 10

*N. J. Misc.* 99 (*Sup. Ct.* 1932) wherein Mr. Justice Ackerson, while a circuit court judge, held that a pension or retirement fund the terms of which included a clause prohibiting assignment, was not subject to attachment on the ground that public policy "should protect from dissipation reasonable pension funds created for the protection of low or medium salaried industrial employees in their old age, through the medium of contributions from a large class of such employees augmented by more substantial contributions from the employer" and at page 105 said:

"In the case of pension funds, however, so long as installments therefrom have not been turned over to the beneficiaries, the present policy of encouraging old age pensions should predominate, and should outweigh the consideration of creditors, who would otherwise derive a benefit from contributions made largely by others, which the parties directly concerned had endeavored in their contract to preserve for the exclusive purpose of caring for members of their class, who through economic conditions have not been in a position to acquire reserve assets against the diminishing earning power of old age."

That the policy of this State is in favor of exemptions from civil process in cases of public pension funds appears from an analysis of legislative treatment thereof. See for example: *R. S.* 43:13–9; *R. S.* 43:13–44 as amended *L.* 1945, *c.* 213, *sec.* 1; and *L.* 1943, *c.* 189, *sec.* 5 (*N. J. S. A.* 43:13–37.5) (pension funds in certain cities, towns and villages); *R. S.* 43:10–14; *L.* 1943, *c.* 160, *sec.* 22 (*N. J. S. A.* 43:10–18.22); *L.* 1948, *c.* 310, *sec.* 22 (*N. J. S. A.* 43:10–18.71) and *R. S.* 43:19–57 as amended *L.* 1944, *c.* 234, *sec.* 1 (pension funds, various county officers and employees); *R. S.* 43:19–17 (pension funds, street and water department employees); *R. S.* 18:13–110 and *R. S.* 18:5–80 (pensions for teachers and employees of school districts); *R. S.* 43:16–7 as amended (police and firemen; pension funds—*L.* 1944, *c.* 253, *sec.* 8, added the exemption from civil process); *L.* 1944, *c.* 255, *sec.* 17 (*N. J. S. A.* 43:16*A*–17, police and firemen, state retirement system); *L.* 1941, *c.* 220, *sec.* 7 (*N. J. S. A.* 43:7–13, prison officers pensions). Also exemp-

tion from civil process and assignment has been enacted with respect to benefits under the unemployment compensation law (*R. S.* 43:21–15), the workmen's compensation law (*R. S.* 34:15–29) and the "disability benefits" legislation (*L.* 1948, *c.* 110, *sec.* 29; *L.* 1950, *c.* 173, *sec.* 8, *N. J. S. A.* 43:21–53).

Such a purpose as is expressed in *Seventy First Street & Broadway Corp: v. Thorne, supra,* is noted in social legislation in the congressional field in the old age benefits provision of the Social Security Act in connection with which the Congress expressly provided that such benefits should not be subject to assignment, nor to execution, levy, attachment, garnishment, or other legal process. 42 *U. S. C. A., sec.* 407.

In the case of *Chelsea-Wheeler Coal Co. v. Marvin,* 134 *N. J. Eq.* 432, 438 (*E. & A.* 1944), involving a *voluntary* assignment by the beneficiary of the proceeds of life insurance, a restraint against alienation of anticipated life income arising from the life insurance policy was held valid and enforceable in this State.

The so-called "American view" as to "spendthrift trust" is supported by decisions in a majority of the states. See annotations in 119 *A. L. R.,* at *p.* 24 *et seq.,* namely, that the income arising from such a "spendthrift trust" may not be reached by creditors. It was so declared in *Broadway National Bank v. Adams,* 133 *Mass.* 170 (*Mass. Sup. Ct.* 1882), cited with approval in the *Chelsea-Wheeler Coal Co.* case, *supra.* In the *Broadway National Bank* case, the Massachusetts court disposed of the contention that such restriction was against public policy by pointing out that the rule subjecting a debtor's property to the payment of his debts does not give the creditors a right to complaint that, in the exercise of his absolute right of disposition, the donor has not seen fit to give the property to the creditor, but has left it out of his reach.

Plaintiff offers by argument in analogy to the law relating to trusts created by deed or will which contain provisions restraining alienation or anticipation of the beneficial interest, generally denominated for descriptive purposes as "spend-

thrift trusts." Two philosophies are presented in relation thereto.

The first of these contentions is that it is the public policy of this State that a "spendthrift trust" created by a settlor for his own benefit may not be enforced against the rights of his own creditors. That this is the rule in some places appears in *Griswold on Spendthrift Trusts* (2d ed. 1947), *sec.* 474, *p.* 542 *et seq.*, and annotations in 119 *A. L. R.*, at *p.* 35. The only decision approaching this point in this State appears to be *Ward v. Marie, 73 N. J. Eq.* 510, 520 (*Ch.* 1907). The real basis for decision in the *Ward* case was the application of the statutes relating to fraudulent conveyance, and therefore that decision seems inappropriate here. However, we have before us a situation where the defendant did not establish the fund. It was established as a group benefit retirement system by the employer and was not in the nature of a so-called "spendthrift trust" created by the employee (the defendant) for his own benefit. Therefore, we feel that this theory is inapplicable to the present situation.

The second contention is that the policy of the law is to hold invalid a "spendthrift trust" (whether or not created by the settlor for his own benefit) to the extent that it is interposed to deprive a wife of support or alimony, and offers in support *American Law Institute Restatement of the Law, Trusts, vol.* 1, *sec.* 157 (*a*); 1 *Scott on Trusts, secs.* 147, 157.1; *Griswold on Spendthrift Trusts* (1947), *pp.* 387 *et seq.* The continuing duty of a husband to support a wife in whose favor absolute divorce has been granted is grounded in public policy, and the Legislature in *R. S.* 2:50–37 as amended by *L.* 1938, *c.* 235, *p.* 538, *sec.* 1 and *L.* 1948, *c.* 320, *p.* 1291, *sec.* 25, has indicated the intent that this State shall not become a haven for ex-husbands who come here to avoid alimony obligations. However, the policy so exhibited by the above statute is that which precludes a husband from taking *voluntary* action to avoid payment of alimony and thus is similar to the policy which precludes enforcement against creditors of a "spendthrift trust" volun-

tarily created by the settlor for his own benefit. That element is not present here. We are of the opinion that the theory upon which "spendthrift trusts" are pierced elsewhere for the benefit of a divorced wife should not be extended to cover the present case when the language of the insurance policy is so positive "or by operation of law." That is to say, we are confronted with conflicting phases of public policy: on the one hand that policy of this State which upholds the provisions of this group insurance contract as a social security measure to protect retired employees in their old age, and that principle asserted by the plaintiff which if it is applicable here permits a divorced wife to pierce a "spendthrift trust" created for her husband's benefit. It seems judicious to leave any further pronouncement to the Legislature. *Hardenburgh v. Blair,* 30 *N. J. Eq.* 645, 667 (*E. & A.* 1879). An instance of legislative action in this field exists in *L.* 1948, *c.* 67, *p.* 335, *sec.* 196, as amended by *L.* 1950, *c.* 288, *sec.* 2 (*N. J. S. A.* 17:9A–196), a statute relating to creation of retirement funds for savings banks' employees through, *inter alia,* group insurance contracts, which statute permits a limited form of garnishment of annuity benefits.

It is of interest to note that in the resident state of the plaintiff in this action it has been held in *San Diego Trust & Savings v. Heustis,* 10 *P. 2d* 158 (*Dist. Ct. of Apps. Cal.* 1932) that the wife's levy on her husband's income from a trust created by the will of his mother was ineffectual where that trust was a "spendthrift trust," and the court stated:

> "That it is the duty of the husband to support his wife, of course, no one could or would dispute, but the question here is whether this trust estate can be reached for that purpose. The wife has several remedies open to her under the laws of the state of California, * * * but it seems that when she obtained a judgment for support and maintenance she became a judgment creditor and the relation of debtor and creditor exists between her and her husband * * *."

Thus it would appear by analogy the plaintiff in the case before us would not be entitled in her home state to the remedy she seeks here. The general policy of this State as

to income and other property subject to attachment under the attachment act relating to the Superior or County Courts by such a non-resident is stated in *L.* 1948, *c.* 358, *p.* 1435, *sec.* 10 (*N. J. S. A.* 2:42–95) as follows:

"Wages or other compensation for labor or services due to a nonresident employee shall not be attached at the action of a nonresident creditor or his assigns; nor shall the personal property in this State of a nonresident be attached at the action of a nonresident creditor, if such property is exempt from liability for debts by the law of the State of which the debtor and creditor are residents."

A similar statutory provision has long been the law of this State. *R. S.* 2:42–7 (source: *L.* 1901, *c.* 74, *sec.* 1), repealed by *L.* 1948, *c.* 358, *supra.*

No statutory provisions exist in their application to attachment in the district court to reach these funds. It is to be noted that under the statute on attachment in the district courts, *R. S.* 2:32–337, it is provided that the court on return of the *scire facias* may order execution *only* as to moneys or the value of rights and credits of the defendant in the hands of the garnishee at the time of the execution of the writ of attachment. Compare *Little v. Long,* 93 *N. J. L.* 99 (*Sup. Ct.* 1919), and *Terry v. Owatonna Canning Co.,* 119 *N. J. L.* 455 (*E. & A.* 1938). There were no moneys due under the insurance policy in this case when the attachment was served.

In view of the disposition of the primary question involved on these appeals we deem it unnecessary to dispose of the remaining jurisdictional and procedural questions raised and argued before us by the parties. The judgment of the Essex County District Court against the garnishee is reversed and the attachment issued from the Essex County District Court on June 2, 1950, in this cause is vacated, together with the judgment entered against the defendant on said attachment.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, WACHENFELD, BURLING and ACKERSON—5.

*For affirmance*—None.