24 N.J. Super. 180 (1952)
93 A.2d 788
GERTRUDE H. FISCHER, PLAINTIFF-APPELLANT.
v.
FRANK ROLAND FISCHER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1952.
Decided December 30, 1952.
*182 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. William Furst argued the cause for the plaintiff-appellant.
Mr. Leslie H. Cohen argued the cause for the defendant-respondent (Mr. Joseph A. Fuerstman, on the brief).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The sole question raised by this appeal is whether pension benefits payable under R.S. 43:16-1 et seq. may be reached to satisfy an award of alimony. The Chancery Division held such pension benefits are exempt, and the plaintiff Gertrude H. Fischer appeals therefrom.
On March 10, 1947 the plaintiff obtained a decree nisi of divorce on the ground of desertion, wherein defendant was directed to pay $60 per month for the support of Mrs. Fischer and her children, in addition to $240 of arrearages of alimony pendente lite. On September 19, 1947 the amount of monthly alimony was reduced to $40. On July 19, 1951 the Chancery Division, on the plaintiff's application, and after hearings thereon, directed the Police and Firemen's Pension Fund Commission of Irvington, New Jersey, to deduct the sum of $50 each month from the pension check of the respondent, $40 to be applied to alimony and $10 to arrears of alimony of $750, and $35 counsel fees, until such arrears were paid. On February 15, 1952, on the application of the defendant and hearing thereon, the Chancery Division, under the authority of Hoffman v. Hoffman, 8 N.J. 157 (1951), vacated the aforementioned order of July 19, 1951.
The defendant relies upon the provisions of R.S. 43:16-7, the pertinent part of which reads:
"* * * All pensions granted under this chapter shall be exempt from execution, garnishment, attachment, sequestration or other legal process. * * *"
*183 There can be no qestion that there is cast upon a husband the duty to support his family and that it is one of the highest obligations in our social order. 10 New Jersey Practice, Herr on Marriage, Divorce and Separation, sec. 271, p. 245; Bonanno v. Bonanno, 4 N.J. 268 (1950). Such an obligation is a continuing one notwithstanding the dissolution of the marriage where, as here, the divorce was granted on the grounds of the fault of the defendant and a proper judgment of alimony was entered. Herr on Marriage, Divorce and Separation, supra, sec. 273; Lynde v. Lynde, 64 N.J. Eq. 736 (E. & A. 1902), at p. 752, stating:
"* * * the allowance of permanent alimony in cases of absolute divorce, as a means of enforcing the continuing duty of support which the husband owed to the wife, and of which he was not permitted to absolve himself by his own misconduct, although that misconduct resulted in a dissolution of the marriage."
Further, the duty of the husband to comply with the alimony judgment is recognized in this State, and his income and property are subject thereto and may be proceeded against by sequestration. N.J.S. 2A:34-23. It is elementary, of course, that the husband, upon failing to comply with the terms of the alimony judgment, may be proceeded against under contempt proceedings.
We are faced with the question as to whether the pension moneys of the defendant may be attached or sequestrated, at least to the extent of the monthly payments required under the alimony decree, while in the hands of the pension commission. The defendant contends that so far as New Jersey is concerned, this question has been settled adversely to the plaintiff's contention in the case of Hoffman v. Hoffman, supra, wherein Mr. Justice Burling, speaking for the Supreme Court, stated, inter alia:
"That the policy of this State is in favor of exemptions from civil process in cases of public pension funds appears from an analysis of legislative treatment thereof," citing the several New Jersey statutes dealing with such exemptions.
*184 In the Hoffman case Mr. Justice Burling further discussed the plaintiff's argument of the
"analogy to the law relating to trusts created by deed or will which contain provisions restraining alienation or anticipation of the beneficial interest, generally denominated for descriptive purposes as `spendthrift trusts.' Two philosophies are presented in relation thereto.
"The first of these contentions is that it is the public policy of this State that a `spendthrift trust' created by a settlor for his own benefit may not be enforced against the rights of his own creditors. That this is the rule in some places appears in Griswold on Spendthrift Trusts (2d ed. 1947), sec. 474, p. 542 et seq., and annotations in 119 A.L.R., at p. 35."
And:
"The second contention is that the policy of the law is to hold invalid a `spendthrift trust' (whether or not created by the settlor for his own benefit) to the extent that it is interposed to deprive a wife of support or alimony, and offers in support American Law Institute Restatement of the Law, Trusts, vol. 1, sec. 157 (a); 1 Scott on Trusts. secs. 147, 157.1; Griswold on Spendthrift Trusts (1947), pp. 387 et seq."
And stated further that:
"We are of the opinion that the theory upon which `spendthrift trusts' are pierced elsewhere for the benefit of a divorced wife should not be extended to cover the present case when the language of the insurance policy is so positive `or by operation of law.' That is to say, we are confronted with conflicting phases of public policy: on the one hand that policy of this State which upholds the provisions of this group insurance contract as a social security measure to protect retired employees in their old age, and that principle asserted by the plaintiff which if it is applicable here permits a divorced wife to pierce a `spendthrift trust' created for her husband's benefit. It seems judicious to leave any further pronouncement to the Legislature. Hardenburgh v. Blair, 30 N.J. Eq. 645, 667 (E. & A. 1879)."
The plaintiff argues that the Hoffman case is factually distinguishable from the case sub judice and, therefore, is not controlling, arguing that the exemption there was based on a clear and unequivocal contract between the errant husband and the insurance company under whose policy the benefit *185 payments were made, and that it would have been necessary for the court to write a new contract for the parties "an act which a court is always loath to carry out," but "In the present case, however, the exemption is based, not on the narrow terms of a contract, but on the sweeping terms of a statute. In order to allow the appellant's claims here requires no more than a construction of the statute in accord with the general policy in favor of support and in accord with the general policy of the statute as evidenced in R.S. 43:16-3"; that "In our statute there is no avowed intent to make the exemptions applicable to alimony payments, and since the legislature has had sufficient opportunity to act, it must be presumed that there is no such intent, but that to the contrary, the intent is in accord with the policy favoring enforcement of alimony payments." The plaintiff contends further that the general rule throughout the United States is contrary to the determination by the Chancery Division, citing Franklin v. Franklin, 176 Misc. 612, 28 N.Y.S.2d 195 (Sup. Ct. 1941), affirmed 262 App. Div. 991, 30 N.Y.S.2d 811 (App. Div. 1941), wherein Justice Walter stated:
"An award of alimony is not an adjudication of a `debt' but a judicial determination of what portion of the husband's estate is to be applied to the performance of the husband's duty to support his wife.
I think, therefore, that an exemption of a disability payment from liability to debts generally is not an exemption thereof from the claims of a wife for alimony."
Plaintiff quotes from the case of Schlaefer v. Schlaefer, 71 App. D.C. 350, 112 F.2d 177, 130 A.L.R. 1014 (U.S.C.A.D.C. 1940), wherein the court held that the husband's disability under an insurance policy was not exempt from but was subject to the payment of alimony, as follows:
"* * * inasmuch as the purpose of the exemption statute is to protect not only the husband, but also his family from destitution and becoming a public charge, the exemption statutes will not, unless contrary intention is clearly shown, be construed to enable the husband to claim its benefit against the very persons to whom he owes the *186 obligation of support and maintenance and that to construe the statute otherwise would, at least in part, defeat its avowed object."
The foregoing quotation is not the language employed by the court but is taken from the editorial comment in 30 A.L.R. 1028.
Plaintiff also cites 11 A.L.R. 123; 106 A.L.R. 669 and 130 A.L.R. 1028, wherein she asserts that the cases supporting the rule are collected.
Per contra, the defendant contends that the Hoffman case is controlling here and that R.S. 43:16-7, as amended, exempts the defendant's pension moneys from any garnishee or attachment proceedings or sequestration against the same for the alimony claim of the plaintiff. He contends that:
"* * * we are not dealing here with an attempt to reach monies or property obtained therewith derived from a pension after they have reached the recipient, Jardain v. Fairton Sav. Fund, etc., Association, 44 N.J.L. 376 (Sup. Ct. 1882); nor are we dealing here with a voluntary assignment of accrued pension monies. Appellant labors to create a super-status for her alimony claim on the hypothesis that she is a dependent and that the pension was created for her benefit as well as for the pensioner. Principal reliance is placed by appellant on foreign citations, which can shed no light on the question posed, without a complete review of the specific pension statutes enacted in those foreign jurisdictions and of the general policy obtaining in those states with reference thereto. However, in supposed furtherance of her theory reference is made by her to a statement by former Judge Ackerson as Supreme Court Commissioner, in Seventy-First Street and Broadway Corp. v. Thorp [Thorne], 10 N.J. Misc. 99 (Sup. Ct. 1932), the effect of the statement alluded to, was that the purpose of a pension statute is to protect the pensioner and his family from the claim of creditors. Obviously, the purpose of the pension must be that the pensioner should be able to take care of himself and his family, at least to the extent that the pension makes possible. But this is far from holding that the wife or any other member of the family, by an adversary proceeding, in rem or by any other process known to the law, can specifically reach out to and appropriate the pension or any part thereof against the pensioner's will and to deprive the pensioner personally of the direct benefit thereof."
He contends further that despite the existence of exempting statutes in this State, the plaintiff fails to cite any case other *187 than the case of Morongell v. Morongell (an unreported decision of Judge Schettino in the Chancery Division), "wherein an alimony order was used as a vehicle to circumvent the plain exemption edicts therein."
In view of the language employed by Mr. Justice Burling in the Hoffman case, we feel that its holding is controlling here. In that case the court did not distinguish between a general creditor's rights against the defendant's retirement payments and those under an alimony judgment. In the Hoffman case, although the question of a wife's right under an alimony judgment to sequester her husband's pension moneys under a statutory governmental pension plan, exempting the same from "execution, garnishment, attachment, sequestration or other legal process" was not the factual issue involved, it seems to us that in view of the language employed by the court we must conclude that the Supreme Court regarded the alimony claim in the same category as any other creditor's rights.
The judgment is affirmed.