ANNA G. WHITE *vs.* J. LOUIS WHITE.

Franklin. January 6, 1919. — May 20, 1919.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Marriage and Divorce. Equity Jurisdiction,* To enforce decree of another State in separate maintenance proceedings, Contempt. *Equity Pleading and Practice,* Contempt proceedings, Decree. *Constitutional Law,* Full faith and credit to judgment of court of sister State.

So far as relates to enforcement in the courts of this State, a decree of a court of a sister State for separate maintenance or for alimony ordered in divorce proceedings.is like any other money judgment in an action at law for a debt or a decree of a court of equity for the payment of money, and it is immaterial whether the original decree was based on an action of contract or on a petition for separate maintenance in divorce or probate proceedings.

While such a decree of a court of chancery of New Jersey will be enforced as a foreign judgment here, the plaintiff cannot insist that the same method of enforcement be used here as the one provided in the decree in New Jersey for enforcement there.

A decree for the plaintiff in a suit in equity in our Superior Court to enforce a decree of a New Jersey court of chancery ordering a husband to pay a certain sum of money to his wife, the plaintiff, for her separate maintenance, may be enforced by proceedings in contempt, although the decree of the Superior Court merely directs that a certain sum of money be paid to the plaintiff by the defendant and that execution issue therefor.

BILL IN EQUITY, filed in the Superior Court on July 23, 1918, to enforce a decree of a New Jersey court in chancery in separate maintenance proceedings.

The decree of the New Jersey court was as follows:

"This cause coming on to be heard in the presence of Howe & Davis, Solicitors for and of counsel with the complainant, and in the presence of Ralph E. Lum, Esquire, Solicitor for and of counsel with the defendant, Whereupon, and upon reading the bill of complaint, proofs and report of Hugh B. Reed, Esquire, one of the Special Masters of this Court to whom by a previous order made in this cause it was referred to take depositions and other evidence; and to report, together with his opinion thereon, on the matter of alimony herein; from which and from the other proof produced it now appears to the satisfaction of the Chancellor that the com-

plainant, Anna G. White, and the defendant J. Louis White, were lawfully married on or about October 25, 1899; and that the defendant, without any justifiable cause, abandons the complainant and separates himself from her and refuses, and neglects to maintain and provide for her; and that the defendant was personally served with process in this State;

"It is thereupon, on this Sixteenth day of February, 1918, by his Honor, Edwin Robert Walker, Chancellor of the State of New Jersey, Ordered, adjudged and decreed that the defendant, J. Louis White, do pay to the complainant, Anna G. White, or to her Solicitors, the sum of Ten dollars per week from and after the date of the filing of the bill of complaint in this cause for and towards the support and maintenance of the complainant and her infant child, J. Louis White, Jr., who is now in the custody of the complainant, and that the sums heretofore paid by the defendant for and towards the support of the complainant and her said infant child, J. Louis White, Jr., under order of the court heretofore made on July 17, 1917, shall be credited upon the payments directed to be made under this order.

"And it is further ordered, adjudged and decreed, that a copy of this decree be served forthwith upon the defendant, or his solicitor, and that within ten days after said service, the defendant do give bond to the said complainant in the sum of One thousand dollars, with sufficient surety or sureties, to be approved as to form and security by William A. Lord, Esquire, one of the Special Masters of this Court, for the punctual payments of the alimony and maintenance by this decree awarded to be paid, at the time and in the manner in this decree directed, and upon neglect or refusal of said defendant to give said bond, within the time so specified, or upon his default or that of his surety or sureties to pay the said sum or sums when the same shall fall due according to this decree, that the complainant be at liberty to apply to this Court to award and issue process of sequestration, or for such other process or order, as this Court may, under the circumstances, deem equitable and just, and as may be consistent with the power and authority of this Court.

"And it is further ordered, adjudged and decreed, that the said defendant do further pay to the complainant, or her solicitors, the costs of this suit to be taxed, and also the sum of One hundred

dollars, which is hereby adjudged and decreed to be a reasonable counsel fee for the counsel of said complainant (in addition to the counsel fee allowed by said order of July 17, 1917, amounting to $100) and that the said complainant do have execution for said costs and counsel fee according to the practice of this Court."

In the Superior Court a decree was entered directing the defendant to pay to the plaintiff $1,435.09 and $17.89 costs, and that execution issue therefor. The execution not being paid, the plaintiff, after it was served upon the defendant, moved that the defendant be adjudged in contempt.

The motion was heard by *Aiken*, C. J., who ruled "that the Superior Court had no jurisdiction to punish the defendant for contempt in failing to pay money according to a decree of that court, when that decree is based upon a decree of a New Jersey court in separate support or divorce proceedings in New Jersey," and reported the case for determination by this court.

The case was submitted on briefs.

*W. A. Davenport & C. Fairhurst*, for the plaintiff.

*F. J. Lawler & R. H. P. Jacobus*, for the defendant.

CARROLL, J. In February, 1918, on petition of the plaintiff in the Court of Chancery in the State of New Jersey, — it appearing in divorce proceedings instituted by the defendant that the plaintiff and the defendant were lawfully married in 1899 and the defendant without justifiable cause abandoned, and neglected to provide for, the plaintiff, — the defendant was ordered to pay her "Ten dollars per week from and after the date of the filing of the bill of complaint in this cause [August 16, 1915] for and towards the support and maintenance of the complainant and her infant child." On May 31 an execution issued on this decree for the sum of $1,248 for "arrears of alimony and maintenance and . . . $161.72 costs," against the "goods and chattels" and "the lands, tenements, hereditaments and real estate" of the defendant.

In July, 1918, the plaintiff brought a bill in equity in the Superior Court, Franklin County, alleging that she is the wife of the defendant; that the defendant had failed to make the payments decreed; that "said judgment by said decree is in full force and has not been reversed, annulled or satisfied in whole or in part; . . . that the defendant has removed . . . to the Commonwealth

of Massachusetts, so that said execution cannot be levied upon
his body; and that the defendant has no goods or estate in the
State of New Jersey," and praying that "judgment be entered for
the plaintiff" and "that a decree be entered authorizing execution
to issue in this Commonwealth for the amount due on said exe-
cution" with interest and costs. The defendant demurred to this
bill. The demurrer was overruled, and no appeal was taken from
the order overruling the demurrer. The defendant answered,
the case came on for hearing before a judge of the Superior
Court and a final decree was entered ordering the defendant to
pay to the plaintiff the sum of $1,435.09 and $17.89 costs, and
that execution issue therefor. There was no appeal from this
decree, and to enforce it these proceedings for contempt were
instituted. The plaintiff moving for an order of notice to the
defendant to show cause why he should not be adjudged in con-
tempt, the judge of the Superior Court ruled that the court had
no jurisdiction to punish the defendant for contempt for failing to
pay money according to the decree of the Superior Court, "when
that decree is based upon a decree of a New Jersey court, in sepa-
rate support or divorce proceedings," and reported the case with
the stipulation that, if his ruling was right, the motion should be
overruled; and, if his ruling was wrong, the motion was to stand
for hearing.

The right to bring an action at law or a suit in equity upon a
decree of a court of a foreign State, ordering the payment of arrears
of alimony, was discussed in *Page* v. *Page,* 189 Mass. 85. See
*Allen* v. *Allen,* 100 Mass. 373, 375. In *Wells* v. *Wells,* 209 Mass.
282, it was decided that an action at law could be maintained in
this Commonwealth upon a final decree of the Circuit Court of
Michigan for an ascertained sum of money payable to the divorced
wife for the support of herself and children. In *Taylor* v. *Stowe,*
218 Mass. 248, an execution for arrears of alimony was issued by
the Supreme Judicial Court of Maine. The plaintiff brought an
action in this Commonwealth and recovered on the decree. This
court said, page 250: "The defendant became indebted to the
plaintiff for the instalments of alimony as they accrued. The
decree was an enforceable judgment in the State where it was
rendered; and, at the latest, after execution was issued, it was
not open to revision. Our duty to give effect to it clearly

results from the full faith and credit clause of the Federal Constitution." See *Sistare* v. *Sistare,* 218 U. S. 1.

A decree for separate maintenance or alimony ordered in divorce proceedings is like any other money judgment in an action at law for a debt, or a decree of a court of equity for the payment of money; and it is immaterial whether the original decree was based on an action of contract or on a petition for separate support in divorce proceedings. *Sistare* v. *Sistare, supra.* "Whether the original decree was founded upon a common debt or a claim for alimony is entirely immaterial. In the sister State it was known as a decree for the payment of money, and is seen in no other light." *Page* v. *Page,* 189 Mass. 85, 88.

The New Jersey decree directed the defendant to furnish a bond with sureties to secure the performance of the decree, and if he neglected to give such bond or provide for the payments ordered the plaintiff was at liberty to apply to the court for process of sequestration or for such other order as the court deemed equitable. These were matters of execution and were no part of the judgment. While the judgment will be enforced in our courts, the plaintiff cannot insist that the foreign judgment be executed by means of the remedies directed in the New Jersey decree. *Lynde* v. *Lynde,* 181 U. S. 183. That decree, when it is before the courts of this Commonwealth for enforcement, is a decree merely for the payment of money.

The record presents, on the point reported, the single question whether a court of equity has jurisdiction to enforce a decree by contempt proceedings when that decree is merely for the payment of money. Originally the only way by which a court of equity could enforce its decrees was by process of contempt with imprisonment and sequestration of property, and until the power was conferred by statute or rule of court, a court of equity could not issue an execution in common form. This was true of a decree for the payment of money and such a decree was enforced by a process of attachment for contempt, and not by execution as in an action at law. See Dan. Ch. Pl. & Pr. (6th Am. ed.) 1032, 1042; 10 R. C. L. 353; *Orchard* v. *Hughes,* 1 Wall. 73, 77; *Noonan* v. *Lee,* 2 Black, 499, 509. Power is now given by R. L. c. 159, § 39, to courts of equity to issue writs of execution in common form for the enforcement of their decrees if such process is appropriate,

and also by Equity Rule 37, which rule provides that where a decree in equity is solely for the payment of money, final process to execute the decree may be by writ of execution in common form. See *Burrows* v. *Purple,* 107 Mass. 428, 434; *Slade* v. *Slade,* 106 Mass. 499, 500.

Although in modern practice a money decree in equity is generally enforced by process of execution as in ordinary cases and not by contempt proceedings,— see *Clements* v. *Tillman,* 79 Ga. 451; *Baily* v. *Hornthal,* 154 N. Y. 648; U. S. Equity Rule 8; Equity Rule 37; *Martin* v. *Barnes,* 214 Mass. 29; see, in this connection, *Davis* v. *Davis,* 9 L. R. A. (N. S.) 1071; *Bennett* v. *Bennett,* 18 Dick. 306, — nevertheless a court of equity still retains its jurisdiction to enforce or carry out its decrees, including a decree for the payment of money, by proceedings for contempt. See Dan. Ch. Pl. & Pr. *supra; Jones* v. *Boston Mill Corp.* 4 Pick. 507. And this power to enforce a money decree by attachment for contempt is no greater than the power conferred by R. L. c. 168, §§ 80, 81. *Brown's Case,* 173 Mass. 498. It follows that the court had jurisdiction to enforce its decree for a money payment by issuing an attachment for contempt, and the ruling of the Superior Court that it "had no jurisdiction to punish the defendant for contempt in failing to pay money according to a decree of that court, when that decree is based upon a decree of a New Jersey court in separate support or divorce proceedings in New Jersey" was wrong.

According to the terms of the report, the motion is to stand for a hearing.

*So ordered.*