(No. 5854. February 18, 1932.)

In the Matter of the Application of CARL W. IRISH for a Writ of Habeas Corpus.

[9 Pac. (2d) 501.]

Gustave Kroeger, for Petitioner.

Delana & Delana, for Respondent.

GIVENS, J.—Petitioner, by this writ, seeks release from imprisonment for contempt for failing to pay accumulated instalments for the support and maintenance of his minor children ordered in a previous decree granting his wife a divorce, premised on his inability at the time of the instant contempt proceedings, to so pay.

The showing of ability rested on petitioner's possession of an adjusted compensation certificate issued by the United States government, expressly exempted by section 618, Title 38, U. S. C. A., as amended July 3, 1926, 44 Stats. at Large, 827, from judicial process of compulsion, hence may not be considered; and petitioner's employment as a rural mail carrier for the United States government at $100 per month.

The showing disclosed beyond dispute that at the time of the order of commitment for contempt, petitioner did not have the ability to pay the amount ordered, $754, or more than an insignificant portion thereof.

He must therefore be discharged. (*In re Hamberg,* 37 Ida. 550, 217 Pac. 264.) It is so ordered.

Such disposition, of course, has no bearing on other proceedings which may be initiated to compel, within petitioner's ability, payments of a smaller sum.

Lee, C. J., and Varian and Leeper, JJ., concur.

BUDGE, J., Dissenting.—April 9, 1926, petitioner's wife obtained a divorce from him. By the decree the custody of the two minor children was awarded to her and petitioner was ordered to pay $20 each month for the support, maintenance and education of said children until they reached the

age of majority or until the further order of the court. Petitioner has made no application to modify said order. In 1926, 1927 and 1928 he complied with the order in part only. In 1929, 1930 and 1931 he absolutely ignored the order and contributed nothing for the support and maintenance of his minor children. One child is now nine years old, the other six. Both of the children have at times been dangerously ill. Each has required a major operation, necessitating hospitalization and expert surgical treatment. One child is still under the care of a physician. The mother, athough remarried, has not been able and is not now able to meet the indebtedness incurred and made necessary by reason of such illness and medical and surgical treatment. Upon a hearing on citation to show cause why petitioner should not be punished for contempt for wilfully and contemptuously refusing to comply with the order heretofore referred to, the trial court found from affidavits filed and evidence introduced that petitioner has and has had the ability to comply with the order, adjudged him guilty of contempt, and committed him to jail until he complied with said order. Petitioner seeks to be released by writ of *habeas corpus*.

With respect to the scope of inquiry to which this court is limited in *habeas corpus* proceedings, I think the rule to be as stated in *Ex parte Von Gerzabek,* 63 Cal. App. 657, 219 Pac. 479, as follows:

"It is an established doctrine that, in a proceeding to punish for an alleged contempt, the finding of the court as to the ability of the contemner to comply with the terms of the order is conclusive on *habeas corpus,* and the prisoner cannot be discharged from custody, if the facts showing jurisdiction appear upon the record. *Ex parte Spencer,* 83 Cal. 461, 17 Am. St. 266, 23 Pac. 395. The writ of *habeas corpus* cannot be used as a basis for review as upon appeal. *Ex parte Cottrell,* 59 Cal. 417; *Ex parte Clarke,* 110 Cal. 405, 42 Pac. 905; *Ex parte Levin,* 191 Cal. 207, 215 Pac. 908. The question is one of fact which the court making the order has the right to determine. Here the court found in its order of commitment that petitioner was able to comply with the order, and this adjudication is con-

clusive upon this hearing. And the ability of the contemner in this respect being established, he may be imprisoned until such time as he complies with its conditions, . . . . ''

To the same effect, see 29 C. J. 46, sec. 38; *In re Davis,* 23 Ida. 473, 130 Pac. 768; *In re Knudtson,* 10 Ida. 676, 79 Pac. 641; *In re Heigho,* 18 Ida. 566, Ann. Cas. 1912A, 138, 110 Pac. 1029, 32 L. R. A., N. S., 877; *In re Baugh,* 30 Ida. 387, 164 Pac. 529.

But even if it be conceded that this court may examine the sufficiency of the showing made as to petitioner's ability to comply with the order to justify the finding and judgment of the district court, I am of the opinion that petitioner's ability to comply with the order was fully established. The record discloses that petitioner, for the last past five years has had and at the time of the hearing had a contract with the government as a rural mail carrier at a salary of $100 per month. It further appears that petitioner is the holder of an adjusted compensation certificate issued by the United States government for $1,447, upon which a loan of $723.50 from said government might be easily and immediately made by petitioner, such loan being authorized by an amendment to the act authorizing such certificate. The amount petitioner is required to pay under the order and which he is in arrears is $754.

It must be borne in mind that this is not a proceeding to compel petitioner to pay alimony but to require him to contribute to the maintenance and support of his minor children. There is abundant authority to the effect that alimony and maintenance and support money are not to be classified as debts. As aptly stated in *Andrew v. Andrew,* 62 Vt. 495, 20 Atl. 817, 819:

''But alimony, or an allowance in the nature of alimony, has been repeatedly held to be not a debt within the meaning of provisions prohibiting imprisonment for debt. *Sheafe v. Sheafe,* 36 N. H. 155; *Ex parte Perkins,* 18 Cal. 60; *Pain v. Pain,* 80 N. C. 322; *Wightman v. Wightman,* 45 Ill. 167. Alimony is decreed to the wife as a provision for future support. The right grows out of the domestic relations of the parties. It is the duty of the husband to support the

wife. That duty does not cease upon the dissolution of the marriage for his misconduct. It is the duty of the father to provide for his children. He is not relieved from that duty when their custody is given to the mother. The court is therefore authorized to decree to the wife so much of the estate of the husband, or such sum of money to be paid in lieu thereof, as it deems just. The decree is not because of an indebtedness, but is on the ground of personal duty. It may be varied from time to time, as the measure of the duty varies with the conduct or circumstances of the parties. *Campbell v. Campbell,* 37 Wis. 206; *Buckminster v. Buckminster,* 38 Vt. 248, (88 Am. Dec. 652). It is evident that this is something more than the mere ascertainment of an amount due, which the petitioner is at liberty to collect if she can. It is an assignment of property which the court undertakes to put her in possession of. The money is to be paid by the petitionee in lieu of a part of his estate. The decree is in its nature specific. For a refusal to comply with such an order, commitment for contempt is a proper, and sometimes the only adequate, remedy." See, also, *In re Spencer,* 83 Cal. 460, 17 Am. St. 266, 23 Pac. 395; *Ex parte Perkins,* 81 Cal. 60; *Livingston v. Superior Court,* 117 Cal. 633, 49 Pac. 836, 38 L. R. A. 175; 1 Cal. Jur. 1010, 1058; 17 C. J. 1372 (note 32, d).

The rule would seem to have even stronger application in the case of allowance for support and maintenance of minor children, which being true, such children are not creditors for protection against whose claims exemption statutes are available. It was never the intention of legislative bodies to enact exemption statutes whereby a father, by availing himself of such provisions, might relieve himself of the natural and legal duty to support and maintain his minor children. Furthermore, the act providing for adjusted compensation, which is practically the same as a pension, indicates strongly that such compensation is for the benefit not only of the veteran entitled thereto but of his dependents, and has been so construed. If the veteran had died before making application, or after application but before issuance· of certificate, the amount of his adjusted service credit "shall be paid

to his dependents" (U. S. C. A., Title 38, sec. 661, as amended July 3, 1926), the same section enumerating the preference of dependents. The term "dependent" is defined and specifically includes children of the veteran under a certain age (U. S. C. A., Title 38, secs. 662, 667, as amended July 3, 1926), and provision is made for application for benefits by dependents. (U. S. C. A., Title 38, sec. 664, as amended July 3, 1926.) Other sections of the act in question also indicate the interest of dependents. The section relating to exemption (U. S. C. A., Title 38, sec. 618, as amended July 3, 1926) provides:

"No sum payable under this chapter to a veteran or his dependents, or to his estate, or to any beneficiary named under Part V of this chapter, no adjusted service certificate, and no proceeds of any loan made on such certificate shall be subject to attachment, levy, or seizure under any legal or equitable process, or to national or State taxation, and no deductions on account of any indebtedness of the veteran to the United States shall be made from the adjusted service credit or from any amounts due under this chapter."

In holding that the administrator of a veteran may not divert to the veteran's creditors the sum payable under that act, after holding that the payment should have been made to the dependents and not to the veteran's estate, the supreme court of West Virginia, in *Jones v. Price,* 107 W. Va. 55, 146 S. E. 890 said:

"In the second place the sum payable to the dependents is expressly exempted by section 618 of same title (38 U. S. C. A., § 618) from 'attachment, levy or seizure under any legal or equitable process.' It is settled law that, as payments such as this are mere bounties, which the government may grant or withhold at pleasure. Congress may surround these gratuities with such conditions as it deems proper to impose. *Hissem v. Johnson,* 27 W. Va. 644, 652, 55 Am. Rep. 327; *Kellogg v. Waite Tr.,* 94 Mass. (12 Allen) 529, 530; *United States v. Hall,* 98 U. S. 343, 357, 25 L. ed. 180. In discussing an exempting phrase similar to the one above, the court said, in *Hissem v. Johnson, supra:* 'The exemption here declared is absolute and unqualified.' Con-

gress has manifestly intended to so surround this fund with protection that creditors cannot take it away from dependents. It was well said in a recent Iowa decision: 'In other words, during the course of human events, the thought became developed among states and nations that for the good of mankind there are instances when it is best that creditors go unpaid in order that certain individuals in society may have a particular source of income dedicated to personal or family sustenance, maintenance and enjoyment.' *Andrew v. Bank,* 25 Iowa, 872, 219 N. W. 62, 64. Congress having dedicated this bounty exclusively to the dependents of the decedent, the administrator is without any authority whatsoever to divert it to his creditors.''

A case almost identical in facts and directly in point with the instant case is that of *Tully v. Tully,* 159 Mass. 91, 34 N. E. 79, where it was held that it is no ground for reversing a decree commanding a defendant to make certain payments for the support of his wife that his only means of obeying the order are from money received or to be received from a government pension, since such an order does not direct the seizure of any specific sum of money before it reaches the defendant, and pension money being designed in part for the support of the pensioner's family. The court said:

''Pension money is designed in part to enable the pensioner to support his wife and family, and the statute of the United States (Rev. St., § 4747) should not be strained to enable him to avoid this duty.''

In *Zwingmann v. Zwingmann,* 150 App. Div. 358, 134 N. Y. Supp. 1077, a question was presented involving the right of the court to take a portion of a retired police officer's pension for the support and maintenance of his wife who had been legally separated from him, in view of a provision exempting such pensions from execution, process, etc. The court said:

'' . . . . it is contended in behalf of the defendant, who has removed from the state for the purpose of defeating a judgment rendered against him, that his property in this pension fund is exempt from the duty that he owes to the state to support and maintain his wife; that notwithstanding

the legal oneness of the man and wife, which in this respect has not been changed by the statute from the common-law rule, the defendant is entitled to be supported and sustained out of a trust fund created under the laws of this state, while his wife goes hungry. We do not believe the Legislature, in creating the police pension fund and exempting it from execution and other processes, ever intended that this exemption should be construed to deprive the wife of her legal and moral right to the support of her husband. The whole purpose of the statute is served when the fund is preserved for the use of the pensioner and those legally dependent upon him for support and maintenance—when it is held intact for the care of the woman who is, in law, but a part of himself, and entitled, with him, to share in the pension. This is in strict analogy with the doctrine of *Wetmore v. Wetmore,* 149 N. Y. 520, 528, 529, 52 Am. St. 752, 44 N. E. 169, 33 L. R. A. 708; and this court should not be astute in discovering a way to relieve the defendant of his obligations, voluntarily assumed, because of any strict construction of the language of an act which was designed to give protection to the faithful servants of the public and those dependent upon them.''

In *Monck v. Monck,* 184 App. Div. 656, 172 N. Y. Supp. 401, involving facts almost identical with those of the *Z*wingmann case, *supra,* the court quoted with approval from the opinion in that case and also said:

''This decision seems to be in harmony with the decisions of many other states in construing statutory exemptions from levy under executions as not applying to proceedings to enforce alimony for the wife's support. See 50 L. R. A., N. S., 697, note.''

The trend of these and other authorities that might be cited is to the effect that exemption provisions, intended as a protection against creditors, cannot be utilized as a means to defeat the payment of alimony, maintenance and support money ordered paid to a divorced wife or minor children, and for that reason I am unable to concur in the holding of the majority opinion to the effect that the adjusted compensation certificate may not be considered. In that con-

nection it might be observed that his salary as a rural mail carrier may not be reached by garnishment or execution against the United States government. (28 C. J. 64, sec. 80.)

Petitioner's ability to pay should be construed as referring to his pecuniary ability, which contemplates as well his earning capacity as property actually owned. He is in actual receipt of $100 per month and owns the adjusted compensation certificate, upon which he could realize to meet the urgent necessity for the care and maintenance of his minor children. He would not lose his compensation but at most would have to pay a low rate of interest on the amount borrowed until such time as he could make other arrangements, or the interest would be deducted from the balance due under his certificate. The fact that petitioner, if willing so to do, could borrow almost sufficient to pay the amounts due under the order, and that he has a salary of $100 per month from which he could make up the difference, to my mind is a complete and sufficient showing of ability to comply with the order, and I am not convinced that the court erred in requiring resort to any means available to meet the necessities of his minor children.

The record displays a consistent, wilful intent on the part of petitioner to refuse to comply with the order of the court or concern himself as to the welfare of his children. He has not paid a thin dime for the support of his children for the last three years and during that time and upon the hearing made no offer to pay any part thereof. He has never visited his children, even while they were dangerously ill in the hospital. He does not and cannot deny that he can borrow the money upon his adjusted compensation certificate, but urges indebtedness to certain creditors. His first obligation is to his children, but he relegates them to the rear and insists that his first duty is to hold his adjusted compensation certificate for his own protection and needs and to use his salary for his creditors. To hold that he can claim as his own and for his sole benefits the moneys which he might realize on said certificate, which might be used to furnish sustenance and pay for medical attention for his own flesh and blood, and use his salary to meet creditors'

demands, to the exclusion of the rights of his minor children, is not to my mind in keeping with common justice.

It is proper to state that the questions considered in this opinion were not covered by the briefs on file.

Petitioner relies and the majority opinion is based upon the case of *In re Hamberg*, 37 Ida. 550, 217 Pac. 264. However, I am not persuaded that the rule there announced is applicable to the case at bar. The facts were different and in that case the district court found: "that . . . . plaintiff (petitioner) has been able and could have earned sufficient sums to have paid said alimony, and the whole thereof; that the plaintiff (petitioner) has made no sufficient effort to secure said money, or to pay the same; that said wilful failure to pay said money has been and is a wilful disobedience of a lawful judgment and order of this court and has been contemptuous . . . . "

In the instant case the district court found, not that petitioner had been able, but that he was then able to comply with said order; not that he could have earned or that he had not made sufficient effort but that he then had the present ability. The findings in the present case support the judgment of contempt and therein lies the distinction between the instant case and the Hamberg case, *supra*. In the Hamburg case, *supra*, it is said:

" . . . . it is nowhere set forth in the findings that, at the time of the commitment, petitioner was able to pay the amount due," (p. 552) and "To justify the imprisonment of a person until he has performed an act, it must appear that the performance of the act 'is yet in the power of the person to perform.' In the instant case, there is not only no showing that it was within the power of petitioner to pay the alimony, but it definitely appears from the record that at the time of the hearing petitioner was not able to pay the sum which the court directed that he pay in order to secure a release from imprisonment."

I therefore cannot bring myself to conclude that the writ should be quashed and the petitioner discharged.