GERTRUDE H. FISCHER, PLAINTIFF-APPELLANT, v.
FRANK ROLAND FISCHER, DEFENDANT-RESPONDENT.

Argued June 15, 1953—Decided June 25, 1953.

*Mr. William Furst* argued the cause for appellant.

*Mr. Leslie H. Cohen* argued the cause for respondent (*Mr. Joseph A. Fuerstman,* on the brief).

The opinion of the court was delivered by

HEHER, J. We are concerned here with the question of whether the pension provided by *R. S.* 43:16–1 *et seq.,* as amended, is wholly immune from judicial appropriation, before the individual installments reach the hands of the pensioner, to the satisfaction of alimony established by judgment.

The old Court of Chancery awarded plaintiff a decree of divorce from defendant for desertion. The decree *nisi,* entered March 10, 1947, made provision for alimony at the rate of $60 per month, later reduced to $40 per month; the decree was followed by an absolute decree of divorce on June 11, 1947. Defendant defaulted in the payment of the alimony thus decreed; and, the default continuing, and contempt proceedings proving futile, the Chancery Division of the Superior Court on July 19, 1951, when the arrears amounted to $740, ordered the Police and Firemen's Pension Fund Commission of the City of Irvington to make monthly deductions of $40 from the pension payable to defendant as a retired police officer of Irvington, and an additional $10 per month to be applied to the arrears and an unpaid allowance to counsel until full satisfaction was had, and that such moneys be turned over to plaintiff. The pension is at the

rate of $101.56 per month. The deductions were made until March 12, 1952, when the order was vacated (the alimony was at the same time reduced to $30 per month, effective February 21, 1952) on the ground that the order directing the deductions from the installments of pension was *coram non judice* under the principle of *Hoffman v. Hoffman*, 8 *N. J.* 157 (1952). The order annulling the pension allotment constitutes the subject matter of the appeal taken April 25, 1952. It was affirmed by the Appellate Division. 24 *N. J. Super.* 180 (1952).

Defendant remarried and is now cohabiting with his second wife.

It is insisted *in limine* that since the time for appeal from the order of July 19, 1951 had expired when the motion to reopen the order was made on February 15, 1952, what is termed a "change" by this court of "its prior decision on a question of common law," presumably a reference to the *Hoffman* case cited *supra*, is not a sufficient ground for the vacation of the original order—citing, among other cases, *Miller v. McCutcheon*, 117 *N. J. Eq.* 123 (*E. & A.* 1934).

But, as we shall see, the *Hoffman* case is not apposite; and at all events, and for obvious reasons, a continuing order for the payment of money, as in this case, is not proof against formal judicial termination, once it is shown to be void as an excess of judicial power. And even though voidable merely, it cannot stand as to payments *in futuro* when its invalidity is established. All this is axiomatic truth. *Rule* 3:60–2 of this court provides that a final judgment, order or proceeding may be vacated where, *inter alia*, "it is no longer equitable that the judgment or order should have prospective application," or for any reason other than those therein specifically enumerated "justifying relief from the operation of the judgment or order." The motion is required to be made within a reasonable time, and in certain cases not inclusive of the present not later than "one year after the judgment, order or proceeding was entered or taken." *Vide Johnson & Johnson v. Weissbard*, 11 *N. J.* 552 (1953). The rule also provides that a void judgment or order may be vacated; but

a judgment or order of this class may be assailed at any time, directly or collaterally, for it is utterly without vitality and of no force or significance, unless perchance there be grounds for an estoppel. And, such being the case, it does not matter that the attack comes for the first time in this court.

The exemptive clause of the statute is in these words: "All pensions granted under this chapter shall be exempt from execution, garnishment, attachment, sequestration or other legal process." *R. S.* 43:16–7, as amended by *L.* 1944, *c.* 253, *p.* 829. The amendment introduced this provision into the statute.

The argument is that this immunity is by its terms embracive of all judicial processes to enforce decrees for alimony. It is said that the provision expresses a "legislative social policy" freeing such pensions "from direct attack from any source, when not deliberately created to defeat the claims of creditors, leaving the person otherwise free to enforce his claim by other legal and equitable remedies against" the pensioner, "and not against the *res.*" The *Hoffman* case is deemed conclusive of the inquiry; and it is remarked that in none of the statutory immunity clauses of the various pension acts is there in terms "an exception in favor of a divorced wife."

A pension such as this is a stated allowance or stipend to one retired from service, in consideration of past services. The pensioning of civil servants, as well as those in private employment, is designed primarily to attain suitable standards of service at a relatively low wage cost, by a guarantee against want when the servant's years of productivity have ended, thus heightening the morale of the workers and enhancing the quality of the service. *Plunkett v. Board of Pension Commissioners of Hoboken*, 113 *N. J. L.* 230 (*Sup. Ct.* 1934), affirmed 114 *N. J. L.* 273 (*E. & A.* 1935). Considered in context, the immunity clause constitutes a protection against improvidence and creditors in the broad general sense of persons whose claims are grounded in contract or tort, or a penalty or forfeiture, to insure sustenance and a measure of economic security for the pensioner and his

dependent family in the evening of life when earning power has diminished or ceased altogether. It is akin to the policy of the law that limits execution upon the worker's wages for the satisfaction of the claims of creditors.

The phrase "or other legal process" is read by counsel as significant of a purpose to bar recourse to the statutory pension for the satisfaction of an allowance for alimony. But, under the rule of *ejusdem generis*, the general words are qualified by the particular; and the general words are construed to embrace only objects similar in nature to those enumerated by antecedent specific terms, unless the special enumeration exhausts the genus or class. The particular words are essentially restrictive; otherwise, they would have no meaning. *In re Armour's Estate*, 11 *N. J.* 257 (1953).

It will be observed that the general clause here is limited to "legal" process, while the prior specification includes sequestration, an equitable remedial process directed to the enforcement of decrees and orders. The writ of sequestration had its genesis in the English chancery as a *mesne* process in the nature of an attachment to create a lien on property to enforce a judgment or order, or to compel obedience by a person in contempt, and also as a judicial writ, akin to an execution at law, to secure compliance with a decree, and to conserve the property pending suit. *Manning v. Mercantile Securities Co.*, 242 *Ill.* 584, 90 *N. E.* 238, 30 *L. R. A.*, *N. S.*, 725 (*Sup. Ct.* 1909), affirmed *sub nom. Rhodus v. Manning*, 217 *U. S.* 597, 30 *S. Ct.* 696, 54 *L. Ed.* 896 (1909); *White v. White*, 233 *Mass.* 39, 123 *N. E.* 389 (*Sup. Jud. Ct.* 1919). In England, before the Judicature Acts, sequestration was the usual remedy to enforce an order (not being a merely restraining order) of the court of chancery. *Anno.*, 24 *Eng. Rul. Cas.* 40. In English chancery practice, it is a writ of commission, sometimes directed to the sheriff, but usually to four or more commissioners of the complainant's own nomination, authorizing them to enter upon the real or personal estate of the defendant, and to take the rents, issues, and profits into their own hands, and keep possession of or pay the same, as the court shall order or

direct, until the party who is in contempt shall do that which he is enjoined to do and which is especially mentioned in the writ. *Newl. Ch. Pr.* 18; *Blake, Ch. Pr.* 103. The writ has fallen into disuse, except in rare instances, since execution against real property became available for enforcing the payment of chancery decrees.

But however this may be, it is abundantly clear that the policy of the immunity provision is to shield the pensioner against the coercive remedial and executorial processes available to creditors, and thus to secure the pensioner and his family against improvidence and want. "Legal" process undoubtedly has this generic sense, *i. e.*, legal and equitable remedies in favor of those having a right of action grounded in contract or tort, a penalty or a forfeiture. The word "alimony," presumably derived from the Latin *"alere,"* meaning to nourish or sustain, signifies the sustenance or support which a husband may be required to supply to his wife when she is living separate and apart from him, or has been divorced. It was the method by which the ecclesiastical courts of England enforced the duty of support owed by the husband to the wife during such time as they were legally separated pending the marriage relation. *Lynde v. Lynde*, 64 *N. J. Eq.* 736, 751 (*E. & A.* 1902). It is a periodic allowance determined by the wife's needs and the husband's means, and varies from time to time according to changing circumstances. In its very nature, it is not comprehended in the terms of the exemptive clause of the statute under review, designed as it is to secure the pension against the claims of third persons as a means of support for the pensioner and his family.

Such is the outstanding policy of the statute. There is provision for a pension to the dependents of the retired member, his widow and children under the age of 18 years, and his dependent parents if he dies without leaving a widow or children. Amended *R. S.* 43:16–3; 43:16–4. But no pension shall be payable to a child or children of a female member unless it is established that "such child or children would otherwise become a public charge." *R. S.* 43:16–4.1.

A holding barring recourse to the statutory pension to absolve the public from the burden of supporting the pensioner's wife or children would be perversive of the true intent and meaning of the act. And a decree of divorce in favor of the innocent wife does not relieve the guilty husband from the obligation of support; this is the significance of a provision for alimony. *Lynde v. Lynde,* cited *supra.*

A statute is not to be given an arbitrary construction, according to the strict letter, but one that will advance the sense and meaning fairly deducible from the context. The reason of the statute prevails over the literal sense of terms; the obvious policy is an implied limitation on the sense of general terms, and a touchstone for the expansion of narrower terms. *Edgewater v. Corn Products Refining Co.,* 136 *N. J. L.* 664 (*E. & A.* 1948); *Maritime Petroleum Corporation v. City of Jersey City,* 1 *N. J.* 287 (1949). The spirit of a statute gives character and meaning to particular terms. The reason of the law, *i. e.,* the motive which led to the making of it, is one of the most certain means of establishing the true sense. It is not the words of the law, but the internal sense of it that makes the law. The declared policy is the true key to open the understanding of the statute. *Valenti v. Board of Review of the Unemployment Compensation Commission of New Jersey,* 4 *N. J.* 287 (1950). Words are but symbols of thought and expression which necessarily take color and significance from their associated surroundings and the evident policy and purpose of the whole statute.

The interpretive principle in general application elsewhere is that the essential purpose of such immunity from process is the protection not only of the pensioner, but of his family as well, from destitution and the need for public relief, and, absent a clear and definite expression *contra,* the provision will not be read to enable the husband to claim the full benefit of the pension as against his dependent wife and children, and thus to subvert the laws enjoining upon the husband the performance of this basic obligation of the marriage state. This was the ruling in *Schlaefer v. Schlaefer,*

71 *App. D. C.* 350, 112 *F.* 2d 177, 130 *A. L. R.* 1014 (*Ct. App. D. C.* 1940). *Vide, Holmes v. Tallada,* 125 *Pa. St.* 133, 17 *A.* 238, 3 *L. R. A.* 219 (*Sup. Ct.* 1889); also, *Schooley v. Schooley,* 184 *Iowa* 835, 169 *N. W.* 56, 11 *A. L. R.* 123 and *Yager v. Yager,* 7 *Cal.* 2d 213, 60 *P.* 2d 422, 106 *A. L. R.* 669.

 The *Hoffman* case cited *supra* is plainly not to the contrary. There, the subject matter was a group insurance contract which made the retirement annuity and death payments "nonassignable, either by voluntary act or by operation of law"; and the holding was that if the annuity benefits were made available for the satisfaction of the foreign decree for alimony "that contractual undertaking" would be violated. There, the contract was enforced *inter partes*; here, the determinative is the policy of the statute.

The judgment is accordingly reversed; and the cause is remanded for further proceedings in conformity with this opinion.

BURLING, J. (dissenting). The question in this case is whether under the provisions of *R. S.* 43:16–7, as amended by *L.* 1941, *c.* 86, *sec.* 1; *L.* 1943, *c.* 77, *sec.* 1; *L.* 1944, *c.* 253, *sec.* 8; *L.* 1952, *c.* 358, *sec.* 6, a divorced wife may recover alimony payments by order of the Chancery Division of the Superior Court directed to the pension fund commission referred to in the act.

The problem is solely one of statutory construction. There is no consistency of formula in the various statutes of this state which prevent the reaching of pensions for the benefit of others than the pensioner. However, that is a matter for determination by the elected legislative representatives of the people. For instance, in some instances the exemptions refer specifically to debts. See *L.* 1948, *c.* 110, *sec.* 29; *L.* 1950, *c.* 173, *sec.* 8 (*N. J. S. A.* 43:21–53, relating to temporary disability benefits), and *R. S.* 34:15–29 (workmen's compensation claims and payments). Another statute, the Unemployment Compensation Law, refers to debts and then explicitly provides for vulnerability of the compensa-

tion claim to "* * * debts incurred for necessaries furnished to such individual *or his spouse* or dependents during the time when such individual was unemployed." (Emphasis supplied). *R. S.* 43:21–15 (*N. J. S. A.* 43:21–15 (*c*)).

The pertinent language of *R. S.* 43:16–7, as amended, *supra,* is:

"* * * No moneys shall be paid out of the consolidated fund except upon the warrant of the commission, signed by its chairman and secretary. *All pensions granted under this chapter shall be exempt from execution, garnishment, attachment, sequestration or other legal process.* * * *" (Emphasis supplied.)

The above emphasized portion of the statute was added by *L.* 1944, *c.* 253, *sec.* 8, *supra.*

Statutory language, including the phraseology of amendatory acts, is to be given the generally accepted meaning unless the contrary intent is clear. *R. S.* 1:1–1; *Grogan v. DeSapio,* 11 *N. J.* 308, 323 (1953). The portion of *R. S.* 43:16–7, as amended, hereinabove quoted is not of doubtful meaning and therefore the doctrine of *ejusdem generis* is inapplicable. *State v. Mundet Cork Corp.,* 8 *N. J.* 359, 366 (1952), *cert.* den. 344 *U. S.* 819, 73 *S. Ct.* 14, 97 *L. Ed.* —— (1952); *Ford Motor Co. v. N. J. Dept. of Labor and Industry,* 5 *N. J.* 494, 503 (1950); *Edwards v. Mayor, etc., of Borough of Moonachie,* 3 *N. J.* 17, 23, 24 (1949).

The validity of the order from which the present appeal has been taken may be grounded in two elements of the pertinent exemption clause, *R. S.* 43:16–7, as amended, *supra,* namely (a) sequestration and (b) other legal process.

The majority opinion itself demonstrates that the writ of sequestration had its genesis in English equity and included orders to secure enforcement of Chancery decrees. The word "sequestration" as used in *R. S.* 43:16–7 as amended, *supra,* includes the process referred to in the statute relating to alimony, *R. S.* 2:50–37. At the time *L.* 1944, *c.* 253, *sec.* 8, amending *R. S.* 43:16–7, *supra,* was adopted, *R. S.* 2:50–37 as am. *L.* 1938, *c.* 235, *sec.* 1, provided that in alimony cases the appropriate court "* * * may award and issue process

for the immediate sequestration of the personal estate * * *" of the party charged with payment of alimony. The Legislature in enacting the 1944 amendment to *R. S.* 43:16–7, *supra,* was cognizant of existing statutory provisions. Had the Legislature desired to except alimony judgments from the operation of the exemption clause it would have used specific language to that effect. Compare *Festervand v. Laster,* 15 *La. App.* 159, 130 *So.* 634 (*Ct. App.* 1930). The language of *R. S.* 43:16–1 *et seq.,* does not specifically indicate any policy in favor of a divorced wife, but only (after death of the employee) in favor of the "widow and children" or dependent parents of the employee (*R. S.* 43:16–4).

As to the phrase "other legal process" in the exemption clause in the statute, it has been held that an exemption from process includes exemption from orders for the payment of alimony. *Ex parte Smallbone,* 16 *Cal.* 2d 532, 106 *P.* 2d 873, 131 *A. L. R.* 222, 223 (*Cal. Sup. Ct.* 1940). See also *Re Irish,* 51 *Idaho* 604, 9 *P.* 2d 501 (*Sup. Ct.* 1932); *Schooley v. Schooley,* 184 *Iowa* 835, 169 *N. W.* 56, 11 *A. L. R.* 110 (*Sup. Ct.* 1917).

"Process" has been defined as "a writ, warrant, subpoena or other formal writing issued by authority of law," and to include an order of the former Court of Chancery. *In re Martin,* 86 *N. J. Eq.* 265, 273–274 (*Ch.* 1916). "Legal" has been defined as "conforming to the law; according to law; required or permitted by law; not forbidden or discountenanced by law; good and effectual in law." *General Motors Acceptance Corp. v. Schwartz,* 118 *N. J. L.* 25, 29 (*Sup. Ct.* 1937), affirmed on the opinion of the former Supreme Court 118 *N. J. L.* 563 (*E. & A.* 1937).

It is difficult to conceive language more comprehensive than that used in *R. S.* 43:16–7 as amended, *supra.* Patently it includes any order, writ or other formal writing required or permitted by law to be issued by a court of this state. The premise of the majority opinion writes words into the statute which do not expressly exist therein. This is foreign to the method whereby the Legislature has treated the

subject of exemption of pensions, namely to specifically designate the exception from the exemption.

For the reasons herein expressed I would affirm the judgment of the Superior Court, Appellate Division.

WACHENFELD, J., concurs in this dissent.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, JACOBS and BRENNAN—5.

*For affirmance*—Justices WACHENFELD and BURLING—2.